(No. 66918.—

SCOTT WILSON, Appellee, v. THE HOFFMAN GROUP, INC., Appellee (Ideal Roofing, Inc., *et al.*, Appellants).

*Opinion filed October 25, 1989.*

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Thomas A. Brabec, Stephen R. Swofford and Bruce L. Carmen, of counsel), for appellant.

Robert J. Mangan, of Wheaton, for appellee Scott Wilson.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Patricia A. Morton and Christine L.

Olson, of counsel), for appellee The Hoffman Group, Inc.

JUSTICE CLARK delivered the opinion of the court:

Plaintiff, Scott Wilson, was injured in a roofing accident. He filed a two-count complaint, in the circuit court of Du Page County, against the general contractor of the project, The Hoffman Group, Inc. (Hoffman), alleging violations of the Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*) and negligence. Thereafter, Hoffman filed a six-count third-party complaint against Wilson's employer, Ideal Roofing, Inc., Popko Management, Inc., and Popko Roofing and Insulation, Inc. (Ideal-Popko), seeking contribution for Ideal-Popko's negligence and their violation of the Structural Work Act under "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*) (the Contribution Act) and indemnity for Ideal-Popko's breach of a contract to obtain insurance.

Wilson and Ideal-Popko entered into a settlement agreement whereby Ideal-Popko agreed to pay $24,000 in cash and waive their $149,737 statutory workers' compensation lien in exchange for a release from liability from Wilson. The lien in question is statutorily imposed by section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b)). Under section 5(b), an employee who has received workers' compensation benefits is required to reimburse the employer for the full amount of benefits paid or payable by the employer from any recovery the employee receives from a third party legally responsible for the employee's injuries. *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 7.

The settlement agreement and release were conditioned upon a finding by the trial court that the settlement was in good faith within the meaning of section 2(c) of the Contribution Act. Hoffman objected to the

settlement, arguing that (1) a plaintiff/employee could not settle directly with a third-party defendant/employer, (2) the consideration was inadequate for the release, and (3) if the settlement was valid, Hoffman is entitled to a setoff for both the $24,000 cash and the amount of the workers' compensation lien against any judgment obtained against it by Wilson.

Wilson maintained the position that while the value of the workers' compensation lien was sufficient consideration for purposes of the settlement agreement, it should not be considered as a setoff under section 2(c) of the Contribution Act. The trial court found that the plaintiff's position was contrary to law and evidenced a lack of good faith on the part of the plaintiff, and refused to certify the settlement as being in good faith.

Subsequently, Wilson and Ideal-Popko waived the condition that a good-faith finding be entered, and consummated the settlement. The trial court refused to dismiss the third-party complaint pursuant to section 2(d) of the Contribution Act. However, the court found that the order involved a question of law as to which there was a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation (107 Ill. 2d R. 308(a)) and entered an order identifying and certifying the following questions of law for interlocutory review pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308):

"1. Whether the settlement agreement entered into between the plaintiff and the third party defendant, the terms of which were specified in the release documents considered by this court, was in good faith?

2. Whether, when the plaintiff contends the amount of the workmen's compensation lien release should be considered by the court as consideration under the Contribution Act; should not the amount of said workmen's

compensation lien release have to also be considered under 2—C of the Contribution Act as a set-off against any judgment entered in favor of plaintiff?

3. Whether plaintiff should be allowed a double recovery in that the third party defendant employers' reimbursement will not diminish the sums to be collected under the judgment and plaintiff will enjoy collection of the judgment without giving the objecting non-settling defendants the right to any set-off as to said third party defendant employer's reimbursement?

4. Should the waiver of the Workmen's Compensation lien be considered in addition to the $24,000 new money as a set-off, if there should be a judgment against the remaining defendants?

5. Is the plaintiff's position correct that only the 'new money' should be determinative as to what the amount of the set-off should be?"

Ideal-Popko's Rule 308 application for interlocutory appeal was denied by the appellate court. We granted review pursuant to Supreme Court Rule 315(a) (107 Ill. 2d R. 315(a)).

We believe the five questions certified for appeal can be consolidated into two basic questions: (1) whether the settlement between the plaintiff and Ideal-Popko was in good faith pursuant to section 2(c) of the Contribution Act, and (2) whether the amount of the workers' compensation lien should be set off against any subsequent judgment obtained by the plaintiff in accordance with section 2(c) of the Contribution Act. We answer both questions in the affirmative.

We begin by examining the relevant provisions of the Contribution Act. Section 2 of the Act provides in part:

"Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability.

(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." Ill. Rev. Stat. 1987, ch. 70, pars. 302(a) through (d).

Ideal-Popko contends that in accordance with these sections, the trial court should have found the settlement between the plaintiff and Ideal-Popko to have been in good faith and dismissed Hoffman's third-party action for contribution against Ideal-Popko. In considering this argument, the first question we must answer is whether the settlement was made in good faith.

While this court has never specifically considered when a settlement between a plaintiff/employee and a third-party defendant/employer is made in good faith, several appellate court decisions have dealt with this issue. In *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, the appellate court held that a third-party defendant/employer who settles with a plaintiff/employee has not entered into a "good faith" settlement because the employee had no rights to relinquish as consideration for the settlement. In *LeMaster*, the plaintiff was injured when he fell from a roof at Amsted Indus-

tries' plant, and sued Amsted pursuant to the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*). Amsted filed a third-party complaint seeking indemnity and contribution from plaintiff's employer, William R. Montgomery & Associates. Montgomery and plaintiff entered into a settlement conditioned upon dismissal of the third-party action. In the settlement, plaintiff released Montgomery from all liability in tort in exchange for a waiver of the workers' compensation lien and an additional payment. The trial court dismissed the third-party action against the employer pursuant to section 2(d) of the Contribution Act. (*LeMaster*, 110 Ill. App. 3d at 730-31.) The appellate court reversed, holding that since the employee's exclusive remedy against the employer lay within the Workers' Compensation Act, the employee had no rights which he could relinquish in exchange for the lien waiver and cash payment. Consequently, the settlement lacked consideration and was not executed in good faith. *LeMaster*, 110 Ill. App. 3d at 736.

*LeMaster* was decided before this court's decision in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1. In *Doyle*, this court considered the question of whether an action for contribution may be brought against the employer of an injured party. *Doyle* rejected the argument that the employer's immunity from suit by the injured employee precluded a third-party action against the employer for contribution. Rather, this court noted that an employer's statutory immunity from an employee's tort action is an affirmative defense which must be raised or is waived. Until and unless the affirmative defense of exclusive remedy under the Workers' Compensation Act is raised by the employer, he remains "subject to liability in tort" and is within the scope of the Contribution Act. *Doyle*, 101 Ill. 2d at 10-11.

Subsequently, in *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, this court held that a party immune from

direct suit could enter into a valid settlement with a plaintiff. In *Ballweg*, the decedent's representative brought an action against several defendants for injuries sustained by the decedent in a boating accident. The defendants brought a third-party action against the pilot of the boat, Philip Henrici, seeking contribution. Prior to trial, Henrici entered into a settlement with the plaintiff. The trial court found the settlement to have been made in good faith and dismissed Henrici. The appellate court reversed (*Ballweg v. City of Springfield* (1984), 130 Ill. App. 3d 241), holding that because plaintiff's claim against Henrici was barred by the statute of limitations at the time the settlement was entered into, it lacked consideration and did not constitute a good-faith settlement under the Contribution Act. (*Ballweg*, 130 Ill. App. 3d at 252.) This court held that although plaintiff's cause of action against Henrici could have been barred had the statute of limitations been raised, until such time, Henrici was still potentially liable and, consequently, consideration was given by the plaintiff for the settlement. *Ballweg*, 114 Ill. 2d at 122.

Relying on the holdings in *Doyle* and *Ballweg*, recent appellate court decisions have rejected the position adopted in *LeMaster*. In *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, the appellate court held that where an employer is potentially liable to his employee, sufficient consideration exists to support a good-faith settlement for purposes of the Contribution Act. In *Dixon*, the plaintiff was injured when he fell from a scaffold while installing doors at the Commercial News plant. He filed an application for adjustment of claim, seeking benefits pursuant to the Workers' Compensation Act against his employer, George R. Hall, Inc., and a complaint against Commercial, alleging that it had violated the Structural Work Act. Commercial filed a third-party complaint against Hall for indemnity and

contribution. Hall and the plaintiff entered into a settlement agreement whereby Hall agreed to pay the plaintiff $110,000 and to waive its workers' compensation lien to the extent of $70,000. The plaintiff agreed to indemnify Hall against any claim or judgment brought against it because of the accident and further agreed that, if Commercial obtained any judgment against Hall, plaintiff would not execute on the portion of the judgment for which Hall would be responsible. Commercial argued that since Hall did not have a legal liability to compensate the plaintiff outside of the Workers' Compensation Act, the settlement lacked consideration and was not in good faith. Relying on *Doyle* and *Ballweg*, the appellate court rejected this argument, holding that since the employer was potentially liable in tort for purposes of the Contribution Act until he raised and proved an affirmative defense under the Workers' Compensation Act, sufficient consideration existed to support a settlement for purposes of the Contribution Act. *Dixon*, 166 Ill. App. 3d at 751.

The appellate court reached a similar conclusion in *Ellis v. E.W. Bliss & Co.* (1988), 173 Ill. App. 3d 779. In *Bliss*, the plaintiff was injured while operating a punch press. She filed suit against the manufacturer of the press, E.W. Bliss & Co., and her employer, Croname, Inc. Croname was dismissed on the basis that plaintiff's exclusive remedy against her employer was under the Workers' Compensation Act. Subsequently, Bliss filed a third-party complaint for contribution against Croname. Croname and the plaintiff entered into a settlement whereby Croname paid $250,000 to the plaintiff and waived its workers' compensation lien of $38,153.07 for a release from liability. The trial court determined that the settlement had been executed in good faith and dismissed the third-party complaint against Croname. On appeal, Bliss argued that the settlement was not sup-

ported by consideration because Croname had previously been dismissed. The appellate court affirmed the dismissal, stating that although Croname's potential liability in a direct action against it by the plaintiff had been extinguished, Croname was still potentially liable in the third-party action, and release of that liability was sufficient consideration to support the settlement. *Bliss*, 173 Ill. App. 3d at 782.

We find that the position articulated in these appellate court cases is consistent with our decisions in *Doyle* and *Ballweg*, and overrule *LeMaster*, which was decided without the benefit of these decisions. In the present case, it is clear that Ideal-Popko are liable in tort to the plaintiff until they raise the defense of exclusive remedy under the Workers' Compensation Act, and are potentially liable to Hoffman in contribution. It would be incongruous for us to hold that while an employer is subject to liability in tort under the Contribution Act, it cannot avail itself of the Act's provisions to discharge that liability. Consequently, we hold that Wilson's release constituted consideration under the Contribution Act and that its acceptance constituted a valid settlement between Wilson and Ideal-Popko.

Hoffman nonetheless contends that the settlement should not discharge Ideal-Popko from liability in contribution because it was not in "good faith" within the meaning of the Contribution Act. Hoffman argues that the parties' bad faith is evidenced by the plaintiff's insistence that only part of the consideration specified in the release be set off against any subsequent judgment.

The Contribution Act does not specifically define good faith; in determining whether an agreement was made in good faith, all of the surrounding circumstances must be considered. (*Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 122.) However, once a preliminary showing of a good-faith settlement has been made,

the burden shifts to the party challenging the settlement to establish that it was not made in good faith. *Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 766; *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 128-29.

We find that Hoffman has not met its burden of establishing a lack of good faith. The release in question is clear and explicit. It provides that:

> "for and in consideration of the sum of TWENTY FOUR THOUSAND DOLLARS ($24,000), to us in hand paid, receipt of which sum is hereby acknowledged, and further for the consideration of the waiver of the Workmen's Compensation lien in the amount of ONE HUNDRED FORTY NINE THOUSAND AND SEVEN HUNDRED AND THIRTY SEVEN DOLLARS ($149,737) [the Wilsons] DO HEREBY remise, release and forever discharge \*\*\* [Ideal-Popko] from all claims \*\*\*."

Plaintiff was aware at the time he executed this release that section 2(c) of the Contribution Act requires that any subsequent recovery against the other tortfeasor be reduced to the extent of the consideration stated in the release, or in the amount actually paid for it, whichever is greater. (Ill. Rev. Stat. 1987, ch. 70, par. 302(c).) His argument that, contrary to the clear and unambiguous language of the release, he did not intend the lien waiver to constitute consideration for purposes of section 2(c) of the Contribution Act, reflects a unilateral or self-induced mistake on his part, which is not a valid ground for setting aside the release (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 324), and which should not prevent a finding of good faith.

Having determined that the settlement was made in good faith, we consider how it will affect the nonsettling defendant.

Hoffman and Ideal-Popko are in agreement that all of the consideration stated in the release should be set off from any judgment obtained by the plaintiff. As noted

previously, as consideration for a release from liability Ideal-Popko paid $24,000 in cash and waived their workers' compensation lien.

Plaintiff proffers two arguments as to why the amount of the lien should not be set off against any judgment he may obtain against Hoffman. First, he claims that his workers' compensation recovery is money from a collateral source, which should not offset a judgment in an action based on negligence.

We find that Wilson is misapplying the collateral source rule. Under the collateral source rule, benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor. (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 242; Restatement (Second) of Torts §920A (1982).) A situation in which the collateral source rule is frequently applied is one in which the injured plaintiff has been partly or wholly indemnified for the loss by proceeds from his accident insurance. In such a situation, the damages recovered by the plaintiff from the tortfeasor are not decreased by the amounts received from insurance proceeds. The justification for this rule is that the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons. *Peterson v. Lou Backrodt Chevrolet Co.* (1979), 76 Ill. 2d 353; 22 Am. Jur. 2d Damages §566 (1988).

We agree with Wilson that his recovery against Hoffman should not be reduced by virtue of the fact that he has been compensated by a collateral source. (See *Bryntesen v. Carroll Construction Co.* (1963), 27 Ill. 2d 566, 568.) However, in the present case, the issue is not whether Hoffman should benefit from Ideal-Popko's obligation to pay workers' compensation benefits to Wilson,

but whether the waiver of the workers' compensation lien should constitute consideration under section 2(c) of the Contribution Act, and we find that the collateral source rule is not relevant to this issue.

Secondly, plaintiff contends that the amount of the workers' compensation lien should not be set off because it is merely an expectancy of recovery which does not have monetary value, and that only the amount actually paid can be set off against a subsequent judgment. Since only $24,000 was actually paid, he claims that the amount of the setoff can only be $24,000.

We cannot accept this position. It is not necessary that a person waiving a cause of action receive satisfaction in money. Generally, anything of detriment to one side, or benefit to the other, may constitute sufficient consideration to support a settlement. (*Smucker v. Larimore* (1859), 21 Ill. 267.) Plaintiff cannot deny that he obtained a benefit from Ideal-Popko's waiver of their workers' compensation lien. Had Ideal-Popko not waived their lien, the first $149,737 of plaintiff's recovery would have gone to Ideal-Popko. Plaintiff's argument that the waiver has no value ignores reality.

While we find no merit in the plaintiff's arguments, the issue remains as to whether the amount of the lien waiver should be set off against a subsequent recovery by the plaintiff. At this point, several policy considerations must be examined. The first policy is that of preventing double recovery.

The purpose of compensatory tort damages is to compensate the plaintiff for his injuries, not to punish defendants or bestow a windfall upon plaintiffs. (*Peterson v. Lou Backrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 363.) The law in Illinois is that a plaintiff shall have only one recovery for an injury (*Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 558); double recovery is a result which has been condemned (see *Popovich v. Ram Pipe &*

*Supply Co.* (1980), 82 Ill. 2d 203, 209). In the present case, if a setoff is denied, the plaintiff would receive double recovery for the same injury. Plaintiff has already been compensated once for his injury by his employer through workers' compensation benefits, and as a result of the settlement with Ideal-Popko, he is no longer obligated to repay those amounts. Since the workers' compensation benefits were received from a collateral source, they will not diminish any recovery the plaintiff may obtain from Hoffman. If the amount of the lien waiver is not set off from such recovery, the plaintiff will retain both compensation from the employer in the form of workers' compensation benefits and identical damages from Hoffman. We believe such double recovery is exactly what section 2(c) of the Contribution Act is intended to prevent.

The second policy consideration involved is that of protecting the interests of nonsettling defendants. Illinois has a public policy of protecting the financial interests of nonsettling parties in a settlement, and sections 2(c) and (d) of the Contribution Act reflect that policy. (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 224; Ill. Rev. Stat. 1987, ch. 70, pars. 302(c), (d).) We believe that if a setoff were not allowed, Hoffman would be required to pay more than its *pro rata* share of liability, and hold that pursuant to section 2(c) of the Contribution Act, Hoffman is entitled to a setoff to the extent of the amount stated in the release.

We note that a similar result was reached by the Court of Appeals for the Seventh Circuit in *Stifle v. Marathon Petroleum Co.* (7th Cir. 1989), 876 F.2d 552. In *Stifle*, the plaintiff had filed suit against Marathon Oil Company. Marathon filed a third-party complaint for contribution against I&M, plaintiff's employer. I&M settled with the plaintiff for $10,000 and waiver of its workers' compensation lien, and moved to have Marathon's third-

party complaint dismissed pursuant to section 2(d) of the Contribution Act. Marathon objected to the dismissal, arguing that the settlement was not in good faith within the meaning of section 2(c) of the Contribution Act because I&M had the valid defense of exclusive remedy of the Workers' Compensation Act. Relying on *Doyle* and *Ballweg*, the district court found that since I&M had not raised any of its affirmative defenses, it was potentially liable for plaintiff's injuries, and found the settlement to have been made in good faith. (*Stifle v. Marathon Oil Co.* (S.D. Ill. 1988), 684 F. Supp. 552, 555-56.) The court also held that while Marathon was entitled to a setoff in the amount of $10,000 under section 2(c) of the Contribution Act, it did not have a right to a setoff of I&M's waiver of its rights under section 5(b) of the Workers' Compensation Act because the workers' compensation payment was not intended to benefit a primary or joint tortfeasor. *Stifle*, 684 F. Supp. at 556.

On appeal, Stifle argued that the amount of the workers' compensation lien should not be set off from a later judgment because (1) at the time of settlement the lien had no value since it secured only a potential, prospective judgment, and (2) the worker's compensation benefits were derived from a collateral source. (*Stifle*, 876 F.2d at 559-60.) The Seventh Circuit rejected the argument that the lien had no value, holding that at the time of settlement it was merely unclear as to whether the full extent of its value would be realized. (*Stifle*, 876 F.2d at 561.) The court also found that since the employer's lien was voluntarily offered in consideration of Stifle's covenant not to sue, it was not just a collateral source of compensation, and held that Marathon's liability should be set off by the amount of consideration received by Stifle in his settlement, including the full amount of the workers' compensation benefits. *Stifle*, 876 F.2d at 562-63.

Ideal-Popko direct our attention to a passage in *Doyle v. Rhodes*, 101 Ill. 2d 1, in which this court noted that in a situation in which the Contribution Act may impact upon an employer's right of recoupment under section 5(b) of the Workers' Compensation Act, some accommodation between the two statutes may be in order. (101 Ill. 2d at 14-15.) We note that this passage is mere *dicta* in the opinion, and is not binding authority under the rule of *stare decisis* (*Mid-American Lines, Inc. v. Industrial Comm'n* (1980), 82 Ill. 2d 47, 60; *Williams v. Crickman* (1980), 81 Ill. 2d 105, 113), as this point had not been raised by the parties and was not before the court. In the present case, we do not find an accommodation to be necessary.

We are aware that there is also a count for breach of contract pending between Hoffman and Ideal-Popko. That count was not addressed by the trial court in its order and has not been considered on appeal.

For the reasons stated above, we conclude that the settlement between Wilson and Ideal-Popko was made in good faith, and that all of the consideration specified in the release, including the lien waiver of $149,737, should be set off against any subsequent judgment obtained by the plaintiff.

*Certified questions answered;*
*cause remanded.*

JUSTICE RYAN, dissenting:

The opinion of the majority states that it must overrule *LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, which I consider to be a correct decision, because, in the court's words, it "was decided without the benefit of [*Doyle v. Rhodes* (1984), 101 Ill. 2d 1]." This statement is not exactly correct, because the court, in *LeMaster*, cited the appellate court holding in *Doyle v. Rhodes* (1982), 109 Ill. App. 3d 590, which, the *LeMaster*

court noted, held that the "exclusivity provisions of the Workers' Compensation Act do not bar a third-party action for contribution against the original plaintiff's employer." (*LeMaster*, 110 Ill. App. 3d at 734.) That part of the appellate court holding in *Doyle* was affirmed by this court. (*Doyle*, 101 Ill. 2d 1.) The court, in *LeMaster*, did not reject the appellate court holding in *Doyle*, but denied the issues before it on the basis of whether the settlement between the employee and the employer was a good-faith settlement, which is required by "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*) (the Contribution Act). Therefore, the appellate court, in *LeMaster*, contrary to the statement in the majority opinion in this case, did have the benefit of the holding of *Doyle v. Rhodes*.

*Doyle* did not deal with the question before us, which is whether the settlement between the employer and the employee was made in good faith. *Doyle* dealt with the right of contribution between a third-party tortfeasor and the employer. A majority of this court, in *Doyle*, concluded that the employer was "subject to liability in tort" within the meaning of the Contribution Act, unless the employer asserted the defense of the Workers' Compensation Act, and therefore the Contribution Act applied. I will discuss this further later in this dissent.

In our case, we find an employer paying to an employee $24,000 and, in addition, giving the employee a waiver of the statutory workers' compensation lien in the amount of $149,973. What was the consideration given in return by the employee to the employer? There was none. If the employee had made a demand on the employer for a settlement of his tort claim, or if he would have sued the employer, all the employer had to do was to draft a simple answer stating that the employer was not liable in damages because of the provisions of section 5(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48,

par. 138.5(a)). Instead of this simple response, as noted above, the employer paid the employee $24,000 and relinquished the statutory lien under the Workers' Compensation Act of $149,973. This settlement could not have been made in good faith, and the trial court found that the settlement evidenced a lack of good faith on the part of the plaintiff. The settlement was made solely to defeat the third-party plaintiff's claim for contribution.

As further evidence that there was no consideration for this settlement, I point out that the settlement discloses that plaintiff received from the employer both compensation under the Workers' Compensation Act and payment for a common law claim. The settlement releases a claim under the Workers' Compensation Act, which shows that the plaintiff has received or is receiving compensation payments. The $24,000 cash payment, plus the release of the lien, is payment for a common law tort claim. Section 11 of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.11) states that "[t]he compensation herein provided, together with the provisions of this Act, shall be the measure of responsibility of any employer ***." This language, to me, means that an employee cannot collect both compensation payments and payments under a common law tort claim from the employer, or at least if he does, he has given the employer no consideration for the additional payment. This court addressed the double payment question in *Rhodes v. Industrial Comm'n* (1982), 92 Ill. 2d 467, 471, and stated that an employee "cannot recover payments from the employer under both actions." The holding in *Rhodes* is clear that the employee cannot recover both at common law and under the Workers' Compensation Act.

We are, in this case, making bad law to correct an inequity caused by what I perceived, and continue to believe to be, the bad law of *Doyle*. The employer here was trying to shield itself from the contribution claim of the

third-party tortfeasor under the provisions of the Contribution Act, which provides that a tortfeasor who makes a good-faith settlement with a claimant is discharged from any contribution to any other tortfeasor. For the reason stated above, I find that the settlement was not made in good faith. This was the holding of the trial court in this case, which I find not to be contrary to the manifest weight of the evidence.

This court should think seriously about reconsidering *Doyle*. I pointed out in my dissent in that case what I considered to be the faulty logic of the holding. In *Mason v. F. Lli Luigi & Franco Dal Maschio* (7th Cir. 1987), 832 F.2d 383, the Seventh Circuit Court of Appeals agreed with the criticism of the *Doyle* holding contained in my dissent in that case, but stated that even though I may have been correct, it was bound to follow the law as stated in *Doyle*. Also, as noted in *Mason*, a commentator has been critical of the *Doyle* holding. See Ossey, *Workers' Compensation Limits as a Legal Fiction in Illinois*, 74 Ill. B.J. 22, 28 (1985).

I noted above that the employer in this case was simply trying to protect itself against the holding of *Doyle*. Thus, in *Doyle*, the pro-contribution advocates prevailed. The question presented to us in this case results from tactics adopted by the anti-contribution forces to protect against *Doyle*. Next we will find the pro-contribution forces devising new tactics to offset the holding of this case. Instead of perpetuating this merry-go-round, I suggest that we end this chase by providing a merciful demise for *Doyle*.

For the reasons stated above, I respectfully dissent.