RONNY S. CORLEY *et al.*, Plaintiffs-Appellants, v. JAMES McHUGH CONSTRUCTION COMPANY *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—93—2811

Opinion filed September 13, 1994.

Anesi, Ozmon & Rodin, Ltd., of Chicago (Mark Novak and Christopher J. Dallavo, of counsel), for appellants.

Law Offices of Anthony V. Fanone, of Chicago (William J. Hare and Anthony V. Fanone, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs, Ronny S. Corley (Corley) and Laura Corley, appeal from an order granting defendants a setoff for the full amount of a workers' compensation lien that was waived by his third-party employer in a settlement agreement. The issues presented here are whether (1) Corley lacks standing; and (2) under section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1992)), attorney fees and costs may be deducted from the setoff where the employer has waived its workers' compensation lien.

Corley was injured during the rebuilding of the Arlington Park Race Track. He and his wife filed suit against defendants, James McHugh Construction Company, the Turf Club of Illinois, Inc., and Pitt-Des Moines, Inc. (Pitt), alleging violations of the Structural Work Act (740 ILCS 150/0.01 *et seq.* (West 1992)). Thereafter, defendants filed a third-party action against Corley's employer, Broad, Vogt and Conant, seeking contribution under the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 1992) (Contribution Act)).

Corley and his employer entered into a settlement agreement whereby the employer agreed to waive its $404,635 workers' compensation lien in exchange for a release from liability by Corley. A workers' compensation lien is statutorily imposed by section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1992) (section 5(b))). It requires an employee who has received workers' compensation benefits to reimburse the employer for the full amount of benefits from any recovery the employee obtains from a third party legally liable for the employee's injuries. *Wilson v. Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 311, 546 N.E.2d 524.

The settlement agreement also extinguished defendants' claim for contribution against the employer. (740 ILCS 100/2(d) (West 1992).) The circuit court found that the settlement was made in good faith pursuant to the Contribution Act (740 ILCS 100/2(c) (West 1992)) and dismissed defendants' third-party action against the employer.

Following trial, a jury awarded Corley $2,909,535.[1] Pitt filed a motion to adjudicate the extent of the setoff allowed defendants under the Contribution Act due to the settlement agreement between Corley and his employer. Pitt maintained that defendants are entitled to a setoff of $404,635, the full amount of the workers' compensation lien that was waived. Corley's response averred that, under section 5(b), defendants' setoff must be reduced by (1) 25% for attorney fees and (2) $4,150[2] for the employer's proportionate share of costs and expenses. This would result in a setoff of $299,327.

The circuit court held that defendants are entitled to a setoff of 100% of the amount of the waived workers' compensation lien. The court explained the basis for its ruling in a written order: first, the "Contribution Act states that any recovery obtained against other tortfeasors is reduced by the amount of the release of the settling defendant"; and, second, the 25% claimed by Corley "comes from the employer's right to reimbursement under the workers' compensation statute, which was waived." Plaintiffs timely appeal. A Supreme Court Rule 321 (134 Ill. 2d R. 321 (amended)) stipulation was filed, limiting the record on appeal to matters concerning only the setoff.

I

Defendants first claim that we have no jurisdiction over this appeal because Corley lacks standing.

■ Standing is present where the person seeking to invoke the court's jurisdiction has some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. (*Weihl v. Dixon* (1977), 56 Ill. App. 3d 251, 253-54, 371 N.E.2d 881.) The present case involves the amount of the setoff to which defendants are entitled, which will directly impact the size of Corley's final judgment against defendants. He therefore has standing to bring this appeal.

---

[1]All numbers throughout this opinion have been rounded to the nearest dollar amount.

[2]Corley reached this figure by dividing the amount of the workers' compensation payments ($404,635) with the amount of the verdict ($2,909,535), to reach a percentage figure of 14%. Fourteen percent of the litigation costs incurred through July 8, 1993 ($29,640) equalled $4,150.

## II

Corley contends that, pursuant to section 5(b), the circuit court erred in not deducting from defendants' setoff 25% for attorney fees and the employer's *pro rata* share of costs and expenses.

This issue concerns the circuit court's application of the law to uncontroverted facts. Consequently, this appeal presents a question of law for which an appellate court may conduct independent review. *South Suburban Safeway Lines, Inc. v. Regional Transportation Authority* (1988), 166 Ill. App. 3d 361, 365, 519 N.E.2d 1005.

■ In determining the intent and meaning of a statute, a court should first look to the language itself. (*Cunningham v. Huffman* (1993), 154 Ill. 2d 398, 405, 609 N.E.2d 321.) Section 5(b) grants an employer a statutory lien on the proceeds that an employee obtains from a third party, equal to the amount of workers' compensation benefits paid or owed the employee. (820 ILCS 305/5(b) (West 1992); *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 165, 585 N.E.2d 1023.) This right to reimbursement is known as the workers' compensation lien.[3] Section 5(b) further provides in pertinent part:

> "Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." (820 ILCS 305/5(b) (West 1992).)

According to this language, in the *absence of a waiver* of the workers' compensation lien, the employer must pay its *pro rata* share of costs and expenses and, unless otherwise agreed, must pay as fees to the employee's attorney 25% of the gross amount of such reimbursement, if that attorney's services substantially contributed to the reimbursement. "The plain purpose of this provision *** [is] to require an employer to contribute to the necessary costs of the employee's recovery against a negligent third party where the employer is to receive reimbursement from the recovery for workmen's compensation payments made or to be made to the employee." *Reno v. Mary-*

---

[3]Our supreme court stated in *Kotecki* that the workers' compensation lien is in apparent conflict with principles of the Contribution Act. (*Kotecki*, 146 Ill. 2d at 164-65.) The instant case, however, involves no conflict between the two because section 5(b)'s plain language resolves the issue in a manner which comports with the Contribution Act.

*land Casualty Co.* (1962), 27 Ill. 2d 245, 247, 188 N.E.2d 657; see also Annot., 74 A.L.R.3d 854 (1976).

Corley's argument is that he should receive the same section 5(b) attorney fees, costs, and expenses even where the employer has executed a *waiver* of its workers' compensation lien in a settlement. According to Corley, since section 5(b) specifically states that the employer must pay the employee's attorney "[o]ut of any reimbursement," it anticipates that the payment to be made to the employee's attorney will be in the form of a reduction in the amount being reimbursed and not from a different source of funds.

Under Corley's suggested procedure, which he calls "the Corley method," the following would occur under the facts of this case. After trial, the jury would award Corley $2,909,535. The judgment against defendants would be reduced by the full amount of the employer's settlement, $404,635. The employer would not assert its workers' compensation lien against Corley's recovery for $404,635, because it had waived that lien in the settlement. As a result, the employer would not be required to pay attorney fees, costs, and expenses as provided for in section 5(b). Instead, *defendants* would make those payments. Accordingly, defendants' setoff would be reduced to $299,327, leaving Corley with a judgment against them of $2,610,209. Add Corley's final judgment against defendants ($2,610,209) to the workers' compensation benefits he was already paid by his employer ($404,635), and he would receive a total of $3,014,844. Corley would therefore receive an extra $105,309 from defendants for section 5(b) attorney fees, costs, and expenses.

■ Corley's interpretation of section 5(b) must be rejected. Section 5(b) states: "*Out of any reimbursement received by the employer* pursuant to this Section, *the employer* shall pay" the aforementioned attorney fees, costs, and expenses. (Emphasis added.) (820 ILCS 305/5(b) (West 1992).) Section 5(b)'s plain language thus provides that the employer must pay the amounts out of any reimbursement that it receives. Where, as here, the employer waives its right to that reimbursement, the condition precedent of having received the reimbursement as anticipated by section 5(b) never occurred. As a result, the employer is not under any duty or obligation to contribute to the employee's cost of obtaining the recovery. See *Reno,* 27 Ill. 2d at 247.

The section 5(b) payments cannot be shifted to defendants, as Corley suggests, because there is no statutory provision for doing so. Section 5(b) creates a duty upon the *employer* to pay attorney fees, costs, and expenses only when the employer receives a reimbursement of the amounts it paid out in workers' compensation benefits. As

defendants claim, they cannot now be made to stand in the place of the employer for an agreement to which they were not a party, to which they did not agree, and in which they received no assignment of the employer's statutory rights.

Here, the jury awarded Corley $2,909,535. The judgment against defendants was reduced by the full amount of the employer's settlement, $404,635. The employer did not assert its workers' compensation lien against Corley's recovery for $404,635, because it had waived that lien in the settlement. As a result, the employer was not obligated to pay section 5(b) attorney fees, costs, and expenses. Defendants cannot be required to pay those section 5(b) attorney fees, costs, and expenses, because there is no statutory provision providing for this. Accordingly, defendants' setoff properly was reduced by the full amount of the settlement ($404,635), leaving Corley with a judgment against them of $2,504,900. Add Corley's final judgment against defendants ($2,504,900) to the workers' compensation benefits he was already paid ($404,635), and he will receive a total of $2,909,535.

Therefore, Corley appropriately will receive the exact amount that the jury awarded him, $2,909,535. The statute cannot be distorted in order to award him an additional $105,309.

This holding is consistent with the well-established rule of law that litigants are responsible for their own attorney fees and court costs, unless specifically provided for by statute or an agreement. (*Ritter v. Ritter* (1943), 381 Ill. 549, 552-54, 46 N.E.2d 41.) Here, the plain language of section 5(b) simply does not entitle Corley to attorney fees, costs, and expenses under these circumstances.

Corley advances several policy considerations in support of the utilization of his method which remain to be considered. First, Corley says, settlements would be encouraged thereby reducing litigation. He correctly notes that one purpose of the Contribution Act is to encourage settlements. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791; *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 749, 520 N.E.2d 932.) Settlements would be more likely under the Corley method, he claims, because the setoff would be reduced resulting in a larger net return for plaintiff. Although the Corley method would provide plaintiff additional money for attorney fees, costs, and expenses, this is no reason to misinterpret section 5(b) to force defendants to pay those fees. Settlements cannot be encouraged at the expense of defendants.

In a similar vein, Corley asserts that, unless his method is followed, no plaintiff's attorney will ever settle with an employer because to do so would deprive his or her client of money. This claim

is erroneous. The number of settlements will not be reduced by our rejection of the Corley method for the simple reason that attorneys will merely factor any impact of this decision into their settlement negotiations.

Alternatively, Corley insists that plaintiffs will be punished for entering into settlement agreements if his method is not adopted. To the contrary, the fact that plaintiffs are not entitled to section 5(b) fees, costs, and expenses under these circumstances is not punitive. Parties are only entitled to attorney fees and costs where specifically provided for by statute or an agreement. *Ritter*, 381 Ill. at 552-54.

Corley maintains that the policy behind section 5(b) is to compensate plaintiff for creating a fund from which an employer may be reimbursed. Therefore, he concludes, he is entitled to section 5(b) attorney fees, costs, and expenses, regardless of the employer's waiver. The policy behind section 5(b) is to compensate plaintiff for obtaining a judgment from which an employer is reimbursed. (*Reno*, 27 Ill. 2d at 247.) Here, the employer waived that reimbursement to the benefit of Corley so he is not entitled to those fees, costs, and expenses.

Corley submits that he will not obtain a "double recovery" if his method is employed, because he has never paid his attorney for creating a reimbursement fund. Defendants counter that Corley would receive a "double recovery" of the 25% in attorney fees which he seeks, *i.e.*, of $101,159. Prevention of "double recovery" by plaintiffs is an important factor in these circumstances. (*Wilson v. Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 321, 546 N.E.2d 524.) As already demonstrated, simple addition shows that under our computation of defendants' setoff, Corley will receive exactly the amount to which he is entitled, $2,909,535. Under the Corley method, Corley would obtain $3,014,844, which is an extra $105,309. Therefore, a rejection of Corley's proposed method is necessary to prevent an unauthorized recovery.

Corley lastly insists that defendants' interests will be protected sufficiently by granting them a 75% setoff. Defendants vehemently disagree. Protection of the interests of nonsettling defendants is an important consideration. (*Wilson*, 131 Ill. 2d at 319-24.) A 25% loss to the nonsettling defendants is not insubstantial as Corley suggests. His claim must be rejected.

The principle of contribution between joint tortfeasors was adopted to allocate more fairly the plaintiff's damages among the parties based upon their relative degree of fault. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437; 740 ILCS 100/0.01 *et seq.* (West 1992) (codifying *Skinner*).)

This policy was found to conflict with the Workers' Compensation Act's purpose to limit an employer's liability for workplace injuries to an amount set forth in the Workers' Compensation Act. (*Kotecki*, 146 Ill. 2d at 162-63.) In balancing these competing interests, our supreme court has determined that an employer's contribution will be limited by its workers' compensation liability. (*Kotecki*, 146 Ill. 2d at 164-65.) The court explained:

> "[This approach] 'allows the third party to obtain limited contribution, but substantially preserves the employer's interest in not paying more than workers' compensation liability. While this approach may not allow full contribution recovery to the third party in all cases, it is the solution we consider most consistent with fairness and the various statutory schemes before us.' " (*Kotecki*, 146 Ill. 2d at 165, quoting *Lambertson v. Cincinnati Corp.* (1977), 312 Minn. 114, 130, 257 N.W.2d 679.)

The *Kotecki* court therefore recognized that third-party defendants may be forced to pay more than their share of the loss when an employer's contribution is limited. We decline Corley's invitation to extend this inequity to include section 5(b) fees, costs, and expenses where the employer has waived its right to reimbursement in a settlement. In our view, Corley's approach would harm the interests of nonsettling defendants and would fail to advance any other public policy.

The correctness of the circuit court's judgment requires its affirmance.

Affirmed.

SCARIANO and McCORMICK, JJ., concur.