ARLAN R. THIES, Plaintiff-Appellee, v. KORTE-PLOCHER CONSTRUC-
TION COMPANY, INC., Defendant-Appellant.

Fifth District    No. 5—93—0441

Opinion filed December 30, 1994.

CHAPMAN, J., dissenting.

C. Raymond Bell, of Hoagland, Fitzgerald, Smith & Pranaitis, of Alton, for appellant.

William W. Schooley III, of Law Offices of William W. Schooley, of Granite City, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Arlan Thies (plaintiff) filed a claim under the Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.*) against Korte-Plocher Construction Company (defendant) in the circuit court of Madison County for injuries occurring on November 12, 1987. Defendant subsequently filed a third-party claim for contribution against plaintiff's employer, Rednour Steel Erectors, Inc. (third-party defendant). During the trial, plaintiff settled with the third-party defendant for a waiver of the third-party defendant's statutory workers' compensation lien, which amounted to $206,236.49. The trial court approved this settlement as a good-faith settlement and dismissed the third-party action. The cause proceeded to trial, and the jury returned a verdict in favor of plaintiff for $484,436. Neither party filed a post-trial motion.

In January 1993, defendant tendered a check to plaintiff for $278,199.51, representing the amount of the judgment less the entire amount of the workers' compensation lien. After accepting the check as a partial satisfaction of judgment, plaintiff filed, on March 26, 1993, a motion to adjudicate judgment setoff. Plaintiff argued that defendant was not entitled to a setoff of the entire amount of the workers' compensation lien (*i.e.*, $206,236.49). Relying on section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1992)), plaintiff took the position that defendant was entitled to set off only the value of the third-party defendant's workers' compensation lien (*i.e.*, an amount equal to the workers' compensation benefits paid less an attorney fee of 25% and less a *pro rata* share of expenses). On May 24, 1993, the trial court ordered defendant to pay plaintiff's attorney $51,559.12 in attorney fees plus a *pro rata* share of expenses totaling $1,173.28, pursuant to section 5(b).

Defendant now appeals and raises this issue: how much of a judgment setoff is a defendant entitled to when a third-party defendant has settled directly with the plaintiff by waiving its total workers' compensation lien. In other words, is the defendant entitled to a setoff of 100% of the third-party defendant's workers' compensa-

tion lien (*i.e.*, $206,236.49) or 75% of the workers' compensation lien (*i.e.*, $153,504.09, which is $206,236.49 less a 25% statutory attorney fee and less a *pro rata* share of expenses).

Plaintiff asserts that the amount of the judgment setoff the defendant is entitled to claim is "the amount of the consideration actually paid for the good faith settlement between the plaintiff and third-party defendant/employer." Plaintiff successfully argued in the court below that under section 2(c) of the Joint Tortfeasor Contribution Act (Contribution Act)(740 ILCS 100/2(c) (West 1992)) the setoff should be the amount of consideration "actually paid." In relevant part, the Contribution Act provides:

> "When a release or covenant not to sue *** is given in good faith to one or more persons liable in tort arising out of the same injury ***, it does not discharge any of the other tortfeasors from liability for the injury *** unless its terms so provide but it reduces the recovery on any claim against the others to the extent of *any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it,* whichever is greater." (Emphasis added.) 740 ILCS 100/2(c) (West 1992).

■ Because no release or covenant was executed between the plaintiff and the third-party defendant in this case, we agree with plaintiff that the setoff should be the amount of consideration actually paid. However, according to the plaintiff, the amount of consideration actually paid would be 75% of the lien that the third-party defendant could recover after subtracting the 25% statutory attorney fee and a *pro rata* share of expenses pursuant to section 5(b).

We disagree. First, by waiving its lien, the third-party defendant actually paid plaintiff $206,239.49, not 75% of the lien, which would amount to approximately $150,000. Plaintiff received $206,239.49, the full value of the lien, when the third-party defendant waived its right to recover its lien. The case law holds that the full amount of a lien waiver should be set off against any subsequent judgment obtained by the plaintiff against the defendant. In *Wilson v. Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 546 N.E.2d 524, the plaintiff was injured in a construction accident and filed a Structural Work Act claim against the general contractor, who in turn filed a third-party complaint against the plaintiff's employer. The plaintiff and his employer entered into a settlement in which the employer *waived its entire statutory workers' compensation lien of $149,737* and paid plaintiff an additional $24,000. After rejecting the plaintiff's argument that the lien had no value because it was only an expectancy of recovery, the court in *Wilson* stated, "the issue remains as to whether the amount of the lien waiver should be set off against a

subsequent recovery by the plaintiff." (*Wilson*, 131 Ill. 2d at 321, 546 N.E.2d at 530.) Following an analysis of policy considerations, the court concluded by holding "that all of the consideration specified in the release, *including the lien waiver of $149,737*, should be set off against any subsequent judgment obtained by the plaintiff." (Emphasis added.) *Wilson*, 131 Ill. 2d at 324, 546 N.E.2d at 532; see also *Higginbottom v. Pillsbury Co.* (1992), 232 Ill. App. 3d 240, 256, 596 N.E.2d 843, 854 ("the full value of the [employer's] lien waiver will be set off from plaintiff's recovery pursuant to section 2(c) of the Contribution Act"); *Stifle v. Marathon Petroleum Co.* (7th Cir. 1989), 876 F.2d 552, 562-63 (same).

■ Second, by allowing the plaintiff to recover an additional $52,732.40 (*i.e.*, the attorney fee and *pro rata* share of expenses) from the defendant, the plaintiff would be overcompensated. Plaintiff has already received: (1) $206,236.49 as a result of his settlement with the third-party defendant and (2) $278,199.51 from the defendant. When added together, these two sums yield a figure of $484,436, the amount of the jury verdict. To give plaintiff $52,732.40 in attorney fees and expenses would result in plaintiff recovering a total of $537,168.40.

Lastly, and most importantly, is plaintiff's attempted reliance on section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1992)), which provides:

"Out of any reimbursement received by the *employer* pursuant to this Section, the *employer* shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee *** have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, *the employer shall pay such attorney 25% of the gross amount of such reimbursement.*" (Emphasis added.)

■ The gist of plaintiff's claim is that he is entitled to payment from defendant (who is not the plaintiff's employer) of the 25% statutory attorney fee and expenses. However, as is clear from the text of section 5(b), the recovery of attorney fees and expenses applies only to employers. (See *Rice v. McDonald's Corp.* (1994), 268 Ill. App. 3d 201 (employer required to pay the statutory attorney fee and *pro rata* share of costs).) Based on the facts of this case, section 5(b) has no application because plaintiff's employer received no "reimbursement" of its statutory workers' compensation lien. The bottom line is that the 25% attorney fee and expenses can only come from the

employer, and only if a recovery is effected for that employer by plaintiff's attorney. The case law uniformly supports this proposition. "In our view, section 5(b) allows attorneys for employees who *obtain a judgment* from a third party to recover from the employer 25% of the workers' compensation lien if the employee's attorneys substantially contributed to the procurement of the judgment. \*\*\* Only when the employer brings the suit *and litigates* the suit to a judgment can the employer receive the amount of the compensation lien free from the obligation to pay 25% of the reimbursement to the employee's attorneys." (Emphasis in original.) *Dukes v. J.I. Case Co.* (1989), 186 Ill. App. 3d 439, 444, 542 N.E.2d 439, 442; see also *Zuber v. Illinois Power Co.* (1990), 135 Ill. 2d 407, 415-16, 553 N.E.2d 385, 388-89; *Higginbottom,* 232 Ill. App. 3d at 247-48, 596 N.E.2d at 848-49; *Langley v. H.K. Ferguson Co.* (1989), 186 Ill. App. 3d 1036, 1041-42, 542 N.E.2d 1200, 1204.

Our decision is in full accord with a recent case from the first district. In *Corley v. James McHugh Construction Co.* (1994), 266 Ill. App. 3d 618, 639 N.E.2d 1374, a case whose facts are identical to those of the instant case, plaintiff sought to recover section 5(b) attorney fees and costs even though his employer had executed a waiver of its workers' compensation lien in a settlement (*Corley,* 266 Ill. App. 3d at 621, 639 N.E.2d at 1375-76). The court in *Corley* held:

"Corley's interpretation of section 5(b) must be rejected. Section 5(b) states: '*Out of any reimbursement received by the employer* pursuant to this Section, *the employer* shall pay' the aforementioned attorney fees, costs, and expenses. (Emphasis added.) [Citation.] Section 5(b)'s plain language thus provides that the employer must pay the amounts out of any reimbursement that it receives. Where, as here, the employer waives its right to that reimbursement, the condition precedent of having received the reimbursement as anticipated by section 5(b) never occurred. As a result, the employer is not under any duty or obligation to contribute to the employee's cost of obtaining the recovery. See *Reno* [*v. Maryland Casualty Co.* (1963)], 27 Ill. 2d [245,] 247[, 188 N.E.2d 657].

The section 5(b) payments cannot be shifted to defendants, as Corley suggests, because there is no statutory provision for doing so. Section 5(b) creates a duty upon the *employer* to pay attorney fees, costs, and expenses only when the employer receives a reimbursement of the amounts it paid out in workers' compensation benefits. As defendants claim, they cannot now be made to stand in the place of the employer for an agreement to which they were not a party, to which they did not agree, and in which they received no assignment of the employer's statutory rights."

222

(Emphasis in original.) *Corley*, 266 Ill. App. 3d at 622-23, 639 N.E.2d at 1377-78.

Plaintiff's attorney made a recovery for his client in the amount of $484,000. Presumably, he will receive a fee for his work. To make defendant pay plaintiff the 25% attorney fee and a *pro rata* share of expenses would not only overcompensate plaintiff, but it would also reward plaintiff even though plaintiff never made a recovery for the benefit of his employer.

For the aforementioned reasons, we hereby reverse the order of the circuit court of Madison County.

Reversed.

LEWIS, J., concurs.

JUSTICE CHAPMAN, dissenting:

I dissent, and an explanation of my dissent might benefit from some actual figures and a hypothetical result.

If this case had gone to verdict on both the original complaint and the third-party action, and if the plaintiff had made the same recovery of $484,436 from Korte-Plocher, and if the jury had also found Rednour to be 50% at fault, then the distribution of the proceeds would have been as follows:

Plaintiff: $484,436 from Korte-Plocher.

Korte-Plocher: 50% or $242,218 from Rednour, but this recovery would be limited to the amount of the workers' compensation paid ($206,236.49) by *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023.

The result at this stage:

Plaintiff would be plus $484,436,

Korte-Plocher would be minus $278,200 (-$484,436 + $206,236.49), and

Rednour would be minus $206,236.49.

Now section 5(b) of the Workers' Compensation Act comes into play. If there had been no waiver of the lien, Rednour would be entitled to recover from the plaintiff-employee the amount it had paid under the Workers' Compensation Act, $206,236.49 less a 25% fee and its *pro rata* share of the costs ($51,559.12), or $154,677.37, which would leave the parties in the following posture: (this calculation ignores the *pro rata* share of the costs)

Plaintiff would be plus $329,758.63 ($484,436 - $154,677.37)

Korte-Plocher would be minus $278,200 (-$484,436 + $206,236)

Rednour would be minus $51,559.12 (-$206,236.49 to Korte)

(+$206,236.49 from plaintiff)

(-$51,559.12 to plaintiff).

Keeping these final figures in mind, we turn to the settlement and subsequent verdict actually reached in this case. Plaintiff would be +$484,436 (verdict against Korte-Plocher). Korte-Plocher gets nothing from Rednour on its third-party action because Rednour was dismissed based on the trial court's finding of a good-faith settlement under the Contribution Act. Although Korte-Plocher receives nothing from Rednour on the third-party action, it is entitled to a reduction of the plaintiff's recovery against it of "any amount stated in the release on the covenant, or *in the amount of the consideration actually paid for it*." (Emphasis added.) (740 ILCS 100/2(c) (West 1992).) The parties agree that the emphasized phrase of the Contribution Act is the only portion applicable here, but they disagree on what "the amount of the consideration actually paid for it" was in this case.

What was that amount? Rednour waived its lien of $206,236.49, but the amount of consideration actually paid to plaintiff was $154,677.37 because Rednour would have to pay plaintiff's attorney $51,559.12.

What are the final figures under the settlement scenario?

Plaintiff would be plus $329,758.63 (+$484,436 from Korte-Plocher — $154,667.37 to Rednour). Korte-Plocher would be minus $329,758.63 (-$484,436 + $154,667.37 (credit)). Rednour would be minus $206,236.49 paid in workers' compensation benefits. The plaintiff does not make a double recovery; his recovery is identical. There is a difference in the ultimate results for Korte-Plocher and Rednour, but the difference is created by the different means of the reduction of the judgment against Korte-Plocher. In the first scenario, Korte-Plocher's obligation would have been reduced by the amount it could have recovered on its third-party contribution action if the settlement had not been effected. In the second, actual-case scenario, Korte-Plocher's obligation is reduced by the amount of consideration that Rednour actually paid to plaintiff in its good-faith settlement.

The majority equates the amount of money paid by Rednour to plaintiff ($206,236.49) to satisfy its obligations to its employee under the Workers' Compensation Act with the "amount of the consideration actually paid for" settlement of the third-party action. But the amount *actually* paid in consideration of the dismissal of the third-party action is only that amount that Rednour could have recovered from plaintiff if the case had been completely tried, and that is $206,236.49 less the 25% attorney fee and *pro rata* share of the costs.

Therefore, I respectfully dissent.