June 30, 1997

1-95-1403

RON L. BRANUM, ) APPEAL FROM 

) THE CIRCUIT COURT

Plaintiff-Appellant ) OF COOK COUNTY, ILLINOIS

) COUNTY DEPARTMENT,   ) LAW DIVISION

)

v. ) No. 89 L 01238

)

SLEZAK CONSTRUCTION COMPANY, INC. )

and WAUKEGAN STEEL SALES, INC., )

) THE HONORABLE,

Defendants-Appellees. ) RONALD C. RILEY,

) JUDGE PRESIDING.

SLEZAK CONSTRUCTION COMPANY, INC., )

and WAUKEGAN STEEL SALES, INC. )

)

Third-Party Plaintiffs, )

)

MILLER STEEL CONSTRUCTION )

COMPANY, INC., )

)

Third-Party Defendant. )

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

On September 26, 1988, plaintiff  Ron L. Branum (Branum), an ironworker employed by Miller Steel Construction Company (Miller), was injured while working on a construction site in Roselle, Illinois.  Plaintiff was injured when a steel joist, upon which he was standing, twisted and came out from under him.  He fell from a height of approximately 20 feet with a bundle of steel decking falling from the same height striking plaintiff.  

Plaintiff brought suit against defendants Slezak Construction Company, Inc. (Slezak), and Waukegan Steel Sales, Inc. (Waukegan), under the Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, par. 59.90
 
et
 
seq
.
 (subsequently 740 ILCS 150/0.01 
et
 
seq
.
 (West 1992)) (repealed by Pub. Act 89-2, eff. February 14, 1995)) for injuries he incurred.  Slezak was the general contractor on the job.  In addition to plaintiff̓s claims against defendants, Slezak and Waukegan filed counterclaims for contribution against one another and Slezak filed a third-party complaint against Miller for indemnification.  Slezak and Waukegan later voluntarily dismissed their claims against each other.  

At trial, extensive testimony was offered regarding the extent and nature of plaintiff's injuries and plaintiff's physical rehabilitation, capacity to work and ability to obtain employment.  The jury returned a verdict in favor of plaintiff and against defendants Slezak, Waukegan and Miller in the total amount of $712,000.  The jury also responded in the affirmative to the six special interrogatories submitted to it, specifically finding that Slezak, Waukegan and Miller each violated the Structural Work Act in a way that proximately caused plaintiff̓s injuries and that each of them was in charge of the work.  With regard to the third-party action, the jury allocated fault as between Slezak, Waukegan and Miller and found Slezak and Waukegan each 5% at fault and Miller 90% at fault.  

Furthermore, the trial court granted setoffs in the amount of $34,617 for workers' compensation benefits received by plaintiff from March 3, 1994, to March 20, 1995, and in the amount of $173,764.64, the amount that the trial court determined was the present cash value of Miller's future workers' compensation liability to plaintiff.  Miller waived its statutory right to reimbursement for compensation payments under section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1992)), and the trial court dismissed Miller from the case. 

Plaintiff appeals from the judgment entered on the jury̓s verdict in the amount of $712,000, from the order granting Slezak and Waukegan a setoff in the amount of $276,000 and from the order denying plaintiff̓s post-trial motion for a new trial and granting Slezak and Waukegan additional setoffs in the amounts of $34,617 and $173,764.64.  Specifically, plaintiff contends that: (1) although the jury̓s verdict on the issue of liability is well supported, the jury̓s award of damages is manifestly inadequate and plaintiff is entitled to a new trial on the issue of damages only, and (2) the trial court erred in failing to allow statutory attorney fees and expenses in granting a setoff in favor of Slezak and Waukegan in the amount of plaintiff̓s employer̓s liability under the Workers̓ Compensation Act (820 ILCS 305/5(b) (West 1992)) on plaintiff̓s judgment against them and in allowing a set-off for future undetermined benefits.  

Defendants cross-appeal and argue that, under section 2-1117 of the Code of Civil Procedure (735 ILCS 5/2-1117 (West 1992)), the defendants were jointly and severally liable for past medical expenses and only severally liable for all other damages.

We affirm in part and reverse in part.

ANALYSIS

I

Plaintiff first contends that, although the jury's verdict on the issue of liability is well supported, he is entitled to a new trial on the issue of damages only because the jury's award of damages is manifestly inadequate and against the weight of the evidence and because several prejudicial trial errors resulted in the inadequate damages award.  Defendants respond that this court should refrain from interfering with the jury's discretion to award damages that were warranted by the evidence. 

Generally, damages are within the discretion of the jury.  
Hollis v. R. Latoria Construction, Inc.
 108 Ill. 2d 401, 407, 485 N.E.2d 4 (1985); 
People ex rel. Department of Transportation v. Smith
, 258 Ill. App. 3d 710, 716, 631 N.E.2d 266 (1994).  The exception to that rule, however, is that a reviewing court may order a new trial or overturn a jury verdict when damages are manifestly inadequate or if it is clear that proven elements of damages have been ignored or if the amount awarded bears no reasonable relationship to the loss suffered by the plaintiff. 
Hollis
, 108 Ill. 2d at 407; 
People ex rel. Department of Transportation
, 258 Ill. App. 3d at 716; 
Cerveny v. American Family Insurance Co.
, 255 Ill. App. 3d 399, 406, 626 N.E.2d 1214 (1993).  A jury's award will not be found to be against the manifest weight of the evidence merely because it can be characterized as less than generous. 
Cerven
y, 255 Ill. App. 3d at 407, citing 
Gruidl v. Schell
, 166 Ill. App. 3d 276, 519 N.E.2d 963 (1988).  Furthermore, it is of no consequence to the validity of an award that it differs from an estimate of damages made by an expert, for a jury may reduce an expert's damage calculation without invalidating its verdict.  
F.L. Walz, Inc. v. Hobart Corp.
, 224 Ill. App. 3d 727, 733, 586 N.E.2d 1314 (1992); 
Carter v. Chicago & Illinois Midland Ry. Co.
, 130 Ill. App. 3d 431, 437, 474 N.E.2d 458, 463 (1985).  Furthermore, mere dissatisfaction does not require a new trial on damages (
People ex rel. Department of Transportation
, 258 Ill. App. 3d at 716), because the mere fact that the verdict is less than the claimed damages does not necessarily mean the award is inadequate since the jury is free to determine the credibility of the witnesses and to assess the weight accorded to their testimony. 
Montgomery v. City of Chicago
, 134 Ill. App. 3d 499, 502, 481 N.E.2d 50 (1985). 

Plaintiff argues that 
Hollis v. R. Latoria Construction, Inc.
, 108 Ill. 2d 401, 485 N.E. 204, 
Vacala v. Village of La Grange Park
, 260 Ill. App. 3d 599, 636 N.E.2d 812 (1994), 
Faletti v. Tracy
, 233 Ill. App. 3d 1025, 600 N.E.2d 39 (1992), 
McKenzie v. Romeiser
, 205 Ill. App. 3d 830, 563 N.E.2d 837 (1990), 
Greco v.
 
Coleman
, 138 Ill. App. 3d 317, 485 N.E.2d 1118 (1985), 
Giardino v. Fierke
, 160 Ill. App. 3d 648, 513 N.E.2d 1168 (1987),
 
Burnham v. Lewis
, 217 Ill.App.3d 752, 577 N.E.2d 922 (1991) and 
Carter v. Chicago & Illinois Midland Ry. Co.
, 168 Ill. App. 3d 652, 522 N.E.2d 856 (1988), all support his contention that this court has consistently ordered a new trial on the issue of damages or affirmed the trial court's grant of a new trial where the jury failed to make an appropriate award for proven elements of damages.  However, in each of these cases, the jury had overlooked damages that had been either indisputably proven or uncontroverted, thus necessitating reversal of the verdict. See 
Cerveny
, 255 Ill. App. 3d at 409;
 
People ex rel. Department of Transportation
, 258 Ill. App. 3d at 717.  Thus, the initial issue in this case is whether elements of plaintiff's alleged damages were uncontroverted or indisputably proven at trial such that it is clear that the jury ignored the evidence.  

In the instant case, plaintiff argues that the jury mistakenly awarded only $15,000 for disfigurement even though there was uncontroverted evidence that plaintiff's left ankle had "essentially been obliterated."

Plaintiff also argues that the jury erroneously refused to award any amount for future medical expenses because the undisputed evidence showed that plaintiff was still being treated by Dr. Berg for his left ankle and would be required to see Dr. Berg for treatment for the next six years. Furthermore, plaintiff asserts that Dr. Berg showed that plaintiff likely would require ankle fusion surgery in the future that would cost approximately $16,500. 

Relative to the award for lost earnings, plaintiff contends that the jury erroneously returned a verdict of $150,000 for past lost income and $300,000 for future lost income after Slezak's economic expert testified that, using liberal assumptions, plaintiff's lost earnings totalled $753,811.  

Plaintiff also argues that the award of $142,000 for past and future pain and suffering is inadequate in light of the undisputed evidence of the serious and overwhelmingly painful nature of plaintiff's injuries, as well as the evidence of his repeated hospitalizations and three surgeries. 

Relative to the award for disability, plaintiff contends that the award of $75,000 for disability is inadequate because his expert, Dr. Berg, Waukegan's expert, Dr. Gleason, and Slezak's expert, Dr. Bernstein, all confirmed that Branum suffered permanent changes in his ankle and gave "unanimous" testimony that plaintiff will never return to unrestricted work as an ironworker.

Finally, plaintiff contends that the inadequate nature of the jury's damages award is most apparent with regard to the jury's award for medical expenses in the amount of $30,000.  Plaintiff argues that the evidence shows that plaintiff had incurred more than $71,000 in reasonable and necessary medical expenses and points out that, during closing argument, Slezak's counsel suggested the sum of $67,000 for a reasonable award for past medical expenses. Defendants respond that plaintiff presents no persuasive argument as to why this court should ignore the jury's verdict since the manifest weight of the evidence supports the jury's award.  Specifically, defendants argue that the awards for disability, disfigurement and pain and suffering are incapable of precise calculation and can only be measured by the demeanor and credibility of the witnesses.  In sum, defendants point to various testimony to support their position that these issues were highly contested at trial.  Defendants conclude that plaintiff's complaints are undercut by evidence of inconsistency, exaggeration and legitimate doubts raised by the defense. 

Relative to the awards for past and future medical expenses, however, defendants contend that the awards comported with the evidence adduced at trial.  At the outset, defendants contend that the jury did award plaintiff the sum of $67,000 for past medical expenses but did so on the wrong line of the verdict form.
(footnote: 1)[fn1]  Defendants point out that the jury awarded plaintiff $67,000 for future pain and suffering just one line above the entry of $30,000 for past medical expenses.  Defendants argue that this entry, coupled with the fact that the jury awarded several of the exact sums suggested by defense counsel (
i.e.
 $15,000 for disfigurement, $75,000 for disability and $75,000 for past pain and suffering), suggests that the jury agreed with defendants' assessment of plaintiff's medical expenses and meant to award the amount that the defendants suggested. 

After reviewing the record, it is our view that the issues regarding all of plaintiff's alleged damages were sharply contested during the proceedings as both parties presented conflicting evidence. See 
Natalino v. JMB Realty Corp.
, 277 Ill. App. 3d 270, 278-79, 660 N.E.2d 138 (1995).  We agree with defendants that it does appear that the jury followed defendants' suggestions regarding damages. During her closing argument, defense counsel suggested an award of $75,000 for disability; the jury awarded $75,000.  Counsel suggested $15,000 for disfigurement; the jury awarded $15,000.  Counsel also suggested $75,000 for pain and suffering; the jury awarded $75,000.  Defense counsel suggested $150,000 for lost earnings; the jury awarded $150,000.  Counsel also suggested $250,000 for earnings to be lost in the future; the jury awarded $300,000.  Defense counsel suggested $67,000 for past medical expenses.  However, the jury awarded $30,000 for past medical expenses and then, on the line directly above the line designated for past medical expenses, awarded $67,000 for future pain and suffering.  

In our view, it is entirely plausible that the jury inadvertently erred in following defense counsel's suggestion regarding past and future medical expenses and mistakenly interposed the damage awards.  We cannot point to anything specific in the record that would indicate what the jury could have drawn upon to reach an amount of $67,000 for future pain and suffering. On the other hand, we cannot say that it was entirely implausible that the jury felt $30,000 was an adequate amount for past medical expenses, particularly since our review of the record indicates that plaintiff's counsel did not suggest a specific sum that the jury should award for past medical expenses.  There was testimony about plaintiff's previous back injury, and the issue of whether plaintiff needed various past and future medical treatments was contested.  Moreover, in her closing argument, defense counsel suggested that plaintiff had a series of medical treatments that were unrelated to his alleged injuries.  Since it appears that the jury tended to follow defense counsel's suggestions regarding most of the other damages, it is more probable than not that the jury also followed defense counsel's suggestion to limit plaintiff's award accordingly.  Therefore, we cannot say that the damages awarded were manifestly inadequate or that plaintiff is entitled to a new trial on damages only.  Thus, we hold that the trial court did not abuse its discretion in denying plaintiff's post-trial motion for a new trial on the issue of damages.  See 
Natalino v. JMB Realty Corp.
, 277 Ill. App. 3d 270, 279, 660 N.E.2d 138 (1995)(We review the trial court's decision to deny a motion for a new trial according to whether the court abused its discretion).

Plaintiff next contends that he did not receive a fair trial because the trial court committed numerous errors that prejudiced plaintiff's damages case. We address these errors but find no reversible error in any of plaintiff's contentions. 

Nonpublishable material under Supreme Court Rule 23 omitted.

Plaintiff contends that the trial court erred in modifying and then issuing jury instruction No. 3, which instructed the jury to consider that "an ordinary person must exercise ordinary care to obtain employment." Plaintiff asserts that there was no evidentiary basis for issuing this instruction and that the instruction erroneously suggested to the jury that plaintiff's conduct should be considered in connection with the calculation of damages. 

Our review of the record indicates that, initially, the parties disagreed on the language of jury instruction No. 3.  The instruction was then modified.  The next day, Slezak tendered a modified version of instruction No. 3.  The court read the modified instruction aloud and then specifically asked if there were any objections. Plaintiff's counsel stated that there was no further objection.  A party waives any objection to jury instructions when it does not object at the jury instruction conference.
 
Dabros v. Wang
, 243 Ill. App. 3d 259, 267, 611 N.E.2d 1113 (1993).  Since plaintiff failed to object to the modified version of instruction No. 3 at the conference, this issue is waived on appeal.

Plaintiff also argues that the trial court erred in issuing instruction No. 11, which provided in relevant part:

"Defendants claim that Miller Steel Construction Company, Inc. was in charge of the work and violated the Structural Work Act in one or more of the following respects:

a. allowed an employee to step from scaffolding onto a support that had not been tack welded or bridged."

Plaintiff argues that paragraph "a" of this instruction was prejudicial in that it places the issue of plaintiff's conduct before the jury.  Defendants respond that this instruction merely related only to the action of third-party defendant Miller.  

A particular jury instruction given by the trial court is proper if it is supported by some evidence in the record, and the trial court has discretion in deciding which issues are raised by the evidence. 
Aguinaga v. City of Chicago
, 243 Ill. App. 3d 552, 575, 611 N.E.2d 1296 (1993). We do not believe the trial court abused its discretion in issuing jury instruction No. 11 in that Miller's actions were quite at issue in the case.  The instruction certainly relates to that issue and clearly does not relate to plaintiff's conduct in and of itself. 

Prior to trial, defendants requested that plaintiff be produced for physical examination by their expert, Dr. Bernstein.  When plaintiff was not produced, defendant filed a motion to compel pursuant to Supreme Court Rule 214 (134 Ill. 2d R. 214) to have plaintiff submit to the examination.  The trial court denied defendants' motion.  

Plaintiff contends that the trial court committed reversible error by allowing the defendant's expert, Dr. Bernstein, to testify as to the reason why he was not allowed to physically examine plaintiff.

Prior to trial, defendants filed a motion 
in
 
limine
 seeking to bar all witnesses, including Dr. Bernstein, from mentioning or referring to the fact that Dr. Bernstein did not physically examine plaintiff.  The trial court denied the motion and stated that the parties could question Dr. Bernstein regarding whether he had examined the plaintiff but that when he explained why he had not examined plaintiff, Dr. Bernstein was to state that "the examination was denied by the court, period."  

At trial, however, when Dr. Bernstein was questioned, he stated that he had not been able to examine plaintiff because plaintiff "had had too many examinations."  Plaintiff objected to this answer as a violation on the court's ruling on the motion 
in
 
limine
.  The trial court sustained the objection.  Plaintiff's counsel then asked the court to strike from the record and instruct the jury to disregard "any responses by this witness up to this point in time."  The trial court overruled this objection.  Plaintiff contends that the trial court's refusal to strike the testimony and instruct the jury constitutes reversible error.  Defendants respond that the trial court's corrective action in sustaining the objection cured any possible harm generated by the testimony. A related case is 
Wille v. Navistar International Transportation Corp.
, 222 Ill. App. 3d 833, 584 N.E.2d 425 (1991).

In
 
Wille
, the plaintiff brought suit against a dealership seeking damages for injuries he incurred when his hand became caught in a bunk feeder machine. 222 Ill. App. 3d at 836.  Among the defendants were Navistar International Transportation Corporation (Navistar) which was the distributor of the feeder. Plaintiff's strict liability claim against Navistar alleged that the feeder was defective.  Prior to trial, the trial court granted plaintiff's motion 
in
 
limine
 precluding Navistar from asserting, suggesting or implying that plaintiff's injuries were caused by plaintiff's inattentive, negligent or careless conduct or by any misuse of the feeder.  222 Ill. App. 3d at 837.  However, during Navistar's closing argument, over plaintiff's objection, Navistar repeatedly referred to plaintiff's conduct and knowledge of the dangers of the machine and argued that plaintiff's conduct and not its product, was a proximate cause of plaintiff's injuries.  222 Ill. App. 3d at 837-38.  The jury returned a verdict in favor of Navistar.

The appellate court stated in pertinent part:

"A violation of an order granting a motion 
in
 
limine
 can be the basis for a new trial only if the order is specific and the violation is clear. [Citation.] When the likelihood of prejudice is great, the violation of an order 
in
 
limine
 is reversible error. [Citation.]" 222 Ill. App. 3d at 837.

The appellate court concluded that Navistar focused on what plaintiff was doing and what plaintiff knew and improperly argued that plaintiff assumed the risk of his injuries.  222 Ill. App. 3d at 838-39.  The appellate court also concluded that the likelihood of prejudice from Navistar's violation of the 
in
 
limine
 orders was great and, therefore, constituted reversible error and remanded for a new trial. 222 Ill. App. 3d at 839.

Although 
Wille
 is related to the case 
sub
 
judice
, the facts in the instant case are clearly inapposite from the facts in 
Wille
.  Unlike defense counsel in 
Wille
, defense counsel in the instant case did not repeat or focus on Dr. Bernstein's somewhat fleeting comment.  Furthermore, plaintiff fails to show any prejudice from Dr. Bernstein's comment whereas in
 Wille
, prejudice was evident in that the jury returned a verdict for Navistar. Thus, the trial court's decision in the instant case not to strike the testimony did not constitute reversible error.

Moreover, we agree with defendants that, since the trial court sustained plaintiff's objection to the testimony, any prejudice that might have resulted was cured. See 
Pyse v. Bird
, 115 Ill. App. 3d 1003, 450 N.E.2d 1374 (1983); 
People v. Gonzalez
, 142 Ill. 2d 481, 568 N.E.2d 864 (1991).    

Plaintiff contends that the removal of jurors by the trial court was error.  We disagree.

The examination of the record indicates the following facts.  On January 28, 1994, the trial court took a 10 minute recess after a motion 
in
 
limine
 conference.  During that recess, the trial court dismissed a juror
(footnote: 2)[fn2] because she had vacation plans.  Counsel was not in the courtroom during that time. The parties then returned to the courtroom and held a sidebar outside the presence of the jury.  During this sidebar, the court told counsel that they had 12 jurors and no alternates.  The court asked counsel how they wished to proceed.  The court decided to select four alternates and informed plaintiff's counsel that he had no peremptory challenges remaining. The parties then proceeded to 
voir
 
dire
 and select four alternates.  On the morning of February 1, 1994, plaintiff asked the trial court why jurors had been discharged and the following exchange took place:

"MR. HALEY [Plaintiff's counsel]: Your Honor, previously, prior to the commencement of this portion of the trial this morning we had an initial -- regarding the dismissal of 3 jurors reducing our alternates to zero and leaving us with 12 jurors, and for the record it was not discussed as to why those jurors were excused and I would just like to make that a matter of record, and also the fact that when we went to select the additional alternate jurors because we had used up our peremptories yesterday there were no peremptories to act on any of those jurors.  I think that we ought to know the purpose or the reason that those 3 jurors were excused and who they were.

THE COURT: No, you do not need to know and you don't ought to know.  It is done."

We note that the record includes only information as to why one alternate was dismissed.  Regardless, plaintiff's counsel never objected to the dismissal of the alternates, nor his lack of additional peremptory challenges, and waited until after four new alternates had been selected before even raising this issue. Therefore, the issue is waived. 

Plaintiff further contends that the trial court erred in granting Slezak's motion 
in
 
limine
 preventing plaintiff's economic expert, Walter Johnson, from calculating plaintiff's loss of income to age 65.  Plaintiff argues that Johnson should have been able to calculate plaintiff's lost income up to age 65 and been able to testify as to those calculations.  In his reply brief, plaintiff contends that, as the cases that defendants have relied upon in their brief point out, a litigant may pose hypothetical questions to expert witnesses as long as the hypotheticals are based on facts in evidence or reasonable inferences therefrom.  However, plaintiff fails to point to any evidence that he would have been able to provide any concrete evidence that plaintiff would likely work as an ironworker until the age of 65.   Defendant contends that Johnson's testimony was properly barred because such testimony would have been speculative and remote because there was no reasonable certainty that plaintiff would have worked and earned income as an ironworker until age 65. We agree.

The recovery of future earnings is a proper element of damages to be considered by the trier of fact.  See 
Christou v. Arlington Park - Washington Park Race Tracks Corp.
, 104 Ill. App. 3d 257, 260, 432 N.E.2d 920 (1982).  Recovery, however, must be limited to such loss as is reasonably certain to occur. 
Christou
, 104 Ill. App. 3d at 260.  Testimony as to loss of earnings that is merely speculative, remote or uncertain is improper. 
Christou
, 104 Ill. App. 3d at 260. 

Unlike defendants' expert, Smith, who had a reasonable basis, through expert witness Fisher, upon which to hypothesize that plaintiff could likely earn $9 to $10 an hour in electrical assembly work, there is no indication in the record that Johnson would have been able to provide a reasonable basis for his determination that plaintiff could work and earn income as an ironworker until age 65.  Therefore, it is our view that the trial court did not err in preventing such testimony.

Nonpublishable material under supreme Court Rule 23 omitted.

Another contention by plaintiff is that the trial court committed error when it refused to allow plaintiff to testify regarding whether he needed to return to his chiropractor, Dr. Kogut.  During cross-examination of plaintiff, Slezak's attorney asked plaintiff about what he told Dr. Kogut when he went to see him during the first week of August 1988.  On redirect, plaintiff's counsel asked plaintiff the following question:

"Q. And as of August 9, 1988, and up to the date of the accident, September 26, 1988, had you felt the need to go back and see Dr. Colgot [
sic
]?"

A. No."

Defense counsel objected and the trial court sustained the objection, struck plaintiff's answer and instructed the jury to disregard it.  

Plaintiff contends that the trial court's refusal to allow plaintiff to rebut and explain the testimony that was first addressed on cross-examination was a clear abuse of discretion and the jury was left with the impression that plaintiff was experiencing pain in his back between August of 1988 up to the time of the injury in question.  Defendant cites 
Robinson v. Wieboldt Stores, Inc.
, 104 Ill. App. 3d 1021, 433 N.E.2d 1005 (1982), which stands for the proposition that a witness who is not qualified as an expert is not competent to render an opinion regarding the condition of an injury to his health or need for medical treatment.  We agree with defendants and conclude that there was no error. Plaintiff's counsel's question to plaintiff required plaintiff to make an assessment of his own medical needs.  Such an analysis would have been improper in that plaintiff was not presented as an expert witness who could issue such an opinion.

Plaintiff finally contends that the trial court committed reversible error when it refused to allow plaintiff's rehabilitation expert, James Boyd, to testify about: (1) his assessment of the labor market in regards to plaintiff's ability to work in the future; (2) the recommendations he made to plaintiff regarding self-employment; and (3) about whether the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C.A. § 12101 
et
 
seq.
 (West 1995)) would affect plaintiff's future employability.

On direct examination, James Boyd, plaintiff's rehabilitation counselor, testified that he was retained by plaintiff's counsel to evaluate plaintiff's future potential for employment but that he was not asked and did not attempt to assist plaintiff in finding a job or to provide vocational rehabilitation services.  Plaintiff's counsel asked Boyd what he did to determine plaintiff's accessibility to the job market. Defense counsel objected. The basis for the objection was that the witness was testifying beyond the scope of his deposition testimony.  During a sidebar, Slezak quoted from Boyd's deposition his statement that he had not conducted a labor market survey for plaintiff.  Counsel argued that further testimony about a survey would violate Supreme Court Rule 220 (134 Ill. 2d R. 220). The trial court sustained the objection.

In his brief, plaintiff argues that the trial court never reviewed the deposition transcript of Boyd.  However, we note that plaintiff failed to include a copy of Boyd's transcript for this court. The issue presented is whether the trial court erred in preventing Boyd's testimony about plaintiff's employability under Supreme Court Rule 220.  Without the deposition transcript, we cannot make the requisite inquiry.  See 
O'Brien v. Walker
, 49 Ill. App. 3d 940, 948, 364 N.E.2d 533 (1977).  Thus, the issue is waived.

Relative to the trial court's refusal to allow Boyd to testify on redirect examination about the recommendations he made to plaintiff regarding self-employment, we also find no error.  On redirect examination of Boyd, plaintiff's counsel asked Boyd whether he gave plaintiff advice on what type of job he should seek in Tennessee.  Defense counsel objected on the basis that Boyd had already testified that he had not given plaintiff vocational rehabilitative services and that there was no foundation for such testimony. Despite plaintiff's assertion in his brief to the contrary, the record reveals that the trial court overruled defense counsel's objection.  Later, however, plaintiff's counsel asked Boyd why he suggested that plaintiff open a video rental shop with video equipment repair services.  Defense counsel objected again and argued that the question mischaracterized the witness' testimony in that the witness testified that he did not give plaintiff vocational rehabilitation services. The court sustained this objection. We find no error in the court's ruling.

Regarding plaintiff's last assertion, plaintiff argues that on cross-examination Slezak's counsel questioned Boyd about the ADA but that Boyd was not allowed on redirect to explain what effect the ADA would have on plaintiff's future employability.  We disagree with plaintiff's view of the record.  In our view, defense counsel did not question Boyd about the possible effect of the ADA on plaintiff employability.  During defense counsel's examination of Boyd, the following exchange took place:

"Q. Are you also aware of something called the ADA?

A. Yes.

Q. What is the ADA, Mr. Boyd?

A. The Americans With Disabilities Act.

Q. And what is that, sir?

A. It's a piece of legislation that was passed in part in July of 1992, which provides that reasonable accommodation be made for individuals with disabilities who can't perform the essential functions of a job for which they're applying.

Q. That would be an important law for you as a vocational rehabilitation counselor in finding work for people that have certain physical limitations, would it not, sir?"

A. Very much so.

Q. In fact, it opens up more doors, doesn't it?

A. Yes, it does."

On redirect, however, plaintiff's counsel asked the following:

Q. Mr. Boyd, in regards to the ADA, American with Disabilities Act, did you take that into consideration in regards to [plaintiff]?

A. Yes.

Q. What effect, if any, does that have on his ability to find employment?  How would it apply in this situation?"

At this point, defense counsel objected and argued that Boyd had already testified that he did not try to find plaintiff a job and that further such testimony would be speculation.  Plaintiff's counsel argued that defense counsel had opened the door to such testimony, but the trial court disagreed and sustained the objection. 

In our view, the trial court did not err in preventing the testimony.  Although defense counsel raised the issue of the ADA, she did so in the abstract and in relation to Boyd's responsibilities, in general, as a vocational rehabilitation counselor.  Plaintiff's counsel, on the other hand, attempted to elicit views that directly contradicted the witness's previous statement on cross-examination that he had not attempted to find plaintiff a job or provide plaintiff with vocational rehabilitative services.  Therefore, the trial court properly prevented the testimony. 

II

Plaintiff argues that the trial court erred in failing to allow statutory attorney fees and expenses in granting a setoff in favor of Slezak and Waukegan in the amount of plaintiff's employer's liability under the Workers' Compensation Act (820 ILCS 305/1 
et
 
seq.
 (West 1992))(Act) on plaintiff's judgment against them and in allowing a setoff for future undetermined benefits.

After judgment was entered on the jury's verdict in favor of plaintiff, Miller moved to dismiss defendants' third-party action against it.  Citing 
Lannon v. Kosco
, 158 Ill. 2d 535, 634 N.E.2d 1097 (1994), Miller stated that, in return for a waiver of its statutory right to reimbursement from plaintiff for past and future workers' compensation payments under section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b)(West 1992)), the trial court should dismiss defendants' contribution action against Miller.
(footnote: 3)[fn3]  Defendants Slezak and Waukegan thereafter requested that the trial court reduce the judgment against them by, 
inter
 
alia
, an amount equal to Miller's lien waiver, 
i.e.
, the total workers' compensation payments already made to plaintiff.  On March 24, 1995, and June 17, 1994, the trial court granted the requested setoffs. 

Plaintiff contends that since neither of the setoff orders allowed for the payment of statutory attorney fees and expenses provided under the Act, and since Miller elected to waive its right to reimbursement, the trial court should have reduced the setoff given to defendants Slezak and Waukegan by the amount of the statutory fees and expenses payable to plaintiff's attorney under section 5(b) of the Act.

Defendants respond that statutory attorney fees and costs under section 5(b) of the Act are only recoverable from any reimbursement a plaintiff's employer receives and a plaintiff is not entitled to reduce any setoff awarded or to otherwise shift the burden of section 5(b) payments to a defendant when the plaintiff's employer waives its right to reimbursement under the Act. We agree and hold that plaintiff is not entitled to reduce the setoffs awarded to Slezak and Waukegan by the amount of the statutory attorney fees and costs payable to his counsel.

Section 5(b) of the Act provides in pertinent part:

"Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." 820 ILCS 305/5(b) (West 1992).

Defendants rely on both 
Thies v. Korte-Plocher Construction Co.
, 268 Ill. App. 3d 217, 644 N.E.2d 523 (1994), and 
Corley v. James McHugh Construction Co.
, 266 Ill. App. 3d 618, 639 N.E.2d 1374 (1994).  In 
Thies
, plaintiff, filed a claim under the Structural Work Act against Korte-Plocher Construction Company (Korte) for injuries he incurred.  Defendant subsequently filed a third-party claim for contribution against plaintiff's employer, Rednour Steel Erectors, Inc. (Rednour). During the trial, plaintiff settled with the third-party defendant for a waiver of the third-party defendant's statutory workers' compensation lien.  The trial court approved the settlement and dismissed the third-party action.  The cause proceeded to trial and the jury returned a verdict in plaintiff's favor. Defendant later tendered a check to plaintiff for the amount of the judgment less the entire amount of the workers' compensation lien. 
Thies
, 268 Ill. App. 3d at 218.  In his motion to adjudicate the judgment setoff, plaintiff argued, 
inter
 
alia
, that, under section 5(b) of the Act, defendant was entitled to set off only the value of the third-party defendant's workers' compensation lien, an amount equal to the workers' compensation benefits paid less an attorney fee of 25% and less a 
pro
 
rata
 share of expenses.  The trial court agreed and ordered defendant to pay plaintiff's attorney fees plus a 
pro
 
rata
 share of expenses.  Defendant appealed. 

The appellate court reversed the lower court and held that the recovery of attorney fees and expenses under section 5(b) of the Act applies only to employers.  
Thies
, 268 Ill. App. 3d at 220.  Citing 
Corley
, the appellate court explained that section 5(b) was inapplicable because the plaintiff's employer had received no reimbursement of its statutory workers' compensation lien and that the 25% attorney fee and expenses can only come from the employer, and only if a recovery is effected for that employer by plaintiff's attorney. 
Thies
, 268 Ill. App. 3d at 221. 

 In
 
Corley
, a plaintiff sought to recover section 5(b) attorney fees and costs even though his employer had executed a waiver of its workers' compensation lien in a settlement. The appellate court stated in relevant part:

"Section 5(b)'s plain language thus provides that the employer must pay the amounts [of attorney fees and expenses] out of any reimbursement that it receives.  Where *** the employer waives its right to that reimbursement, the condition precedent of having received the reimbursement as anticipated by section 5(b) never occurred.  As a result,  the employer is not under any duty or obligation to contribute to the employee's cost of obtaining the recovery. [Citation.]  

The section 5(b) payments cannot be shifted to defendants *** because there is no statutory provision for doing so.  Section 5(b) creates a duty upon the employer to pay attorney fees, costs, and expenses only when the employer receives a reimbursement of the amounts it paid out in workers' compensation benefits." [Emphasis omitted.] 
Corley
, 266 Ill. App. 3d at 622-23.

Plaintiff relies on 
Zuber v. Illinois Power Co.
, 135 Ill. 2d 407, 553 N.E.2d 385 (1990), in which our supreme court held, 
inter
 
alia
, that under section 5(b) of the Act, an employer is obligated to pay its proportionate share of costs and expenses, which are incurred in an employee's claim against a third party for injury or death, from any reimbursement received and from future compensation payments the employer is relieved from making by reasons of the third-party recovery. 
Zuber
, 135 Ill. 2d at 416.  We fail to see how 
Zuber
 supports plaintiff's argument as it does not stand for the proposition that a setoff can be shifted to anyone other than a plaintiff's employer.  

In a footnote, plaintiff contends that 
Corley
 and 
Theis
 are factually distinguishable from this case.  We see no distinction.  In our view, both 
Corley
 and 
Theis
 are controlling.  In the instant case, plaintiff's employer, Miller, waived its right to reimbursement of workers' compensation benefits.  Under the plain language of section 5(b), Miller is, therefore, under no duty or obligation to contribute to plaintiff's cost of obtaining the recovery.  The statute simply does not provide a mechanism by which such a duty can be shifted to the third-party defendants.  The plaintiff is, therefore, not entitled to reduce the setoffs awarded to Slezak and Waukegan by the amount of the statutory attorney fees and costs payable to his attorney.

Plaintiff finally contends that Slezak and Waukegan should not have been allowed a setoff in the amount of plaintiff's stipulated future benefits.

In its March 24, 1995, order, the trial court granted Slezak and Waukegan a setoff in the amount of $173,764.64, which represented the present cash value of Miller's future workers' compensation liability. Plaintiff contends that the trial court erred in awarding defendants this additional setoff in that it did not represent the waiver of a lien relating to an actual adjudication of his workers' compensation claim, which remained open at the time of trial and at the time the March 24, 1995, order was entered. Both parties agree that the figure of $173,764.64 was only for the purpose of entering an order in this action and was binding on neither  the workers' compensation action nor on Miller.  Rather, the figure was a stipulation between the defendants.  Plaintiff's concern is that until there is a final adjudication of the workers' compensation claim by the Illinois Industrial Commission, there is no certainty as to the receipt of the benefits and that plaintiff might never collect the entire judgment.  The issue presented is whether the trial court erred, as a matter of law, in presumably estimating the amount of Miller's future workers' compensation liability to plaintiff and then allowing defendants a setoff in that amount, when the exact amount of plaintiff's future workers' compensation payments had not been adjudicated by the Illinois Industrial Commission. This issue is one of first impression in Illinois.  

Our supreme court has held that section 5(b) of the Act imposes the duty of protecting an employer's lien upon the trial court, not the Industrial Commission.  
Freer v. Hysan Corp.
, 108 Ill. 2d 421, 426, 484 N.E.2d 1076 (1985); see also
 
Chaney v. National Steel Corp.
, 272 Ill. App. 3d 850, 855, 651 N.E.2d 731 (1995).  No workers' compensation adjudication is made within a contribution case, however, when a trial court determines the present cash value of future workers' compensation benefits under 
Kotecki v. Cyclops Welding Corp.
, 146 Ill. 2d 155, 585 N.E.2d 1023 (1991). See 
Chaney
, 272 Ill. App. 3d at 856.

In our view, the trial court's determination of $173,764.64 as the present cash value of Miller's future workers' compensation liability was not an adjudication of the amount to be paid to plaintiff.  Rather, the amount was a cap or limitation on the amount of contribution Slezak and Waukegan may claim from Miller and was for purposes of setoff only. 

An instructive case on this issue is the California case of 
Castro v. Fowler Equipment
, 233 Cal. App. 2d 416, 43 Cal. Rptr. 589 (1965).  In 
Castro
, the California District Court of Appeal, Fifth District, addressed the issue of whether the lower court erred in excluding testimony of the monetary value of future compensation benefits.  The appellate court noted that it would have been improper for the jury to have heard testimony and to have 
made a finding of fact
 as to what the Industrial Commission might award the respondent in the event of a hearing because the commission had not yet rated the plaintiff's injuries to determine an award for future benefits. 233 Cal. App. 2d at 421, 43 Cal. Rptr. at 593.  The court considered the fact that a reduction in plaintiff's judgment against the tortfeasor "would mean that the plaintiff would not be able to collect on his common law right but would have to wait for payments on a weekly basis unless he made a lump-sum settlement." 233 Cal. App. 2d at 421, 43 Cal. Rptr. at 593. The court therefore held, 
inter
 
alia
, that a negligent third-party tortfeasor has no right of recoupment that could be made the basis of an affirmative action; the party has only a right to defeat an employer's claim for reimbursement for workers' compensation benefits and a right to a reduction of liability to a plaintiff by the amount of compensation benefits. 233 Cal. App. 2d at 422-23, 43 Cal. Rptr. at 594. Furthermore, the court held that a third-party tortfeasor being sued for injuries sustained by plaintiff while acting within the course and scope of employment would not be entitled to a setoff for future compensation benefits that the plaintiff might be entitled to receive, even if the concurrent negligence of the plaintiff's employer contributed to the plaintiff's injuries and the Industrial Commission had already rated the plaintiff's permanent injuries and made an award of compensation therfor.  233 Cal. App. 2d at 421, 43 Cal. Rptr. at 593. See also
 
Conway v. Continental Insurance Co.
, 180 Mich. App. 447, 450, 447 N.W. 2d 761, 762 (1989) ("[A] setoff cannot be made untilthe amount of workers' compensation benefits to which plaintiff is entitled is finally determined.  Since any reduction of future benefits would be speculative at this point, the circuit court did not err by ordering a set-off of only those benefits already paid").; see also 
Slayton v. Wright
, 271 Cal. App. 2d 291, 76 Cal. Rptr. 494 (1969).

In our view, the analysis set forth in 
Castro
 is applicable in the instant case.  No sound policy reason exists to prevent plaintiff from receiving the present benefits of a judgment by reducing the amount of a recovery in tort by a speculative amount because workers' compensation is available.  

In support of his contention, plaintiff cites the Illinois Supreme Court's ruling in 
Freer v. Hysan Corp.
, 108 Ill. 2d 421, 484 N.E.2d 1076 (1985), a case factually dissimilar to the case 
sub
 
judice
, in which the court noted that a lien cannot be created by the court without an underlying explicit or implicit agreement between the parties or some fixed rule of law. 
Freer
, 108 Ill. 2d at 426.  Section 5(b) of the Act permits an employer to receive a lien on the amount of compensation paid or to be paid to an employee.  But, even if a court could create a lien on benefits that had not yet been determined, it could only do so by agreement of the parties. See generally 
Sands v. J.I. Case Co.
, 239 Ill. App. 3d 19, 605 N.E.2d 714 (1992)(employer was subject to contribution to the extent of its reasonably projected liability for future medical benefits where the parties 
stipulated
 to the present value of future medical benefits).  In the instant case, there was no such agreement. Slezak and Waukegan stipulated with Miller that the value of Miller's future workers' compensation liability amounted to $173,764.64.  Although the court accepted the stipulation by the defendants, the plaintiff was not a party to the stipulation and, in our view, is not bound thereby.  We are mindful that the setoff by the court was effected in order to bring closure to the trial proceedings.  However, in our view, absent an agreement between all parties, a setoff of workers' compensation benefits cannot be made until the amount of workers' compensation benefits to which plaintiff is entitled is fully determined.  See 
Conway v. Continental Insurance Co.
, 180 Mich. App. at 450, 447 N.E. 2d at 762, citing 
Joiner v. Michigan Mutual Insurance Co.
, 161 Mich. App. 285, 298, 409 N.W.2d 808, 819 (1987).  

We therefore hold that the trial court erred in ordering a setoff in the amount of  $173,764.64, which represented the present cash value of Miller's future workers' compensation liability.  The determination of Miller's future workers' compensation liability should be left to the Industrial Commission, which has the statutory power to make such a determination. 820 ILCS 305/19 (West 1992). Accordingly, that portion of the trial court's March 4, 1995, order is reversed. 

III

Defendants cross-appeal and argue that under section 2-1117 of the Code of Civil Procedure (735 ILCS 5/2-1117 (West 1992)) the defendants were jointly and severally liable for past medical expenses and only severally liable for all other damages.

At the time of the relevant proceedings, section 2-1117 provided in pertinent part:

"§ 2-1117.  Joint Liability.  Except as provided in Section 2-1118, in actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict tort liability, all defendants found liable are jointly and severally liable for plaintiff's past and future medical and medically related expenses.  Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant who could have been sued by the plaintiff, shall be severally liable for all other damages.  Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff, shall be jointly and severally liable for all other damages." 735 ILCS 5/2-1117 (West 1992).

Defendants/cross-appellants argue that section 2-1117 applies to the Structural Work Act and, therefore, defendants were jointly and severally liable for past medical expenses awarded by the jury, but only severally liable to pay 5 % of the remaining judgment, less the setoffs. We disagree.

The plain language of section 2-1117 provides that the section applies only to "actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict liability." 735 ILCS 5/2-1117 (West 1992).  Accordingly, plaintiff's claims under the Structural Work Act do not fall within the express categories to which section 2-1117 apply.  

Moreover, we agree with plaintiff/cross-appellees that to apply section 2-1117 to the Structural Work Act would be wholly inconsistent with the expressed purposes of the Act.  Under the Act, there is no basis for the trier of fact to attribute fault to a plaintiff. The purpose of section 2-1117, on the other hand, is to assess damage liability according to fault that is determined in negligence and strict liability actions.  Accordingly, we believe that the trial court was correct in its determination that section 2-1117 is inapplicable to this case.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

GORDON and LEAVITT, JJ., concur.

[fn1]Defendants cite 
Handelman v. Schwartz
, 17 Ill. App. 2d 101, 149 N.E.2d 418 (1957), for support of their assertion that this court should view the jury's award as a non fatal error on the verdict form.  In 
Handelman
, the jury returned a verdict in the plaintiff's favor and awarded the plaintiff a sum of "$4,5000."  The trial court denied plaintiff's motion to correct the verdict to read "$4,500.00" and granted defendant's motion for a new trial on the ground that the damages assessed by the jury were manifestly excessive. The appellate court reversed the trial court's ruling and held that the verdict contained "an obvious unintentional error" in that "an extra zero was inserted inadvertently" and instructed the court to amend the verdict in accordance with the manifest intent of the jury to award the plaintiff damages in the amount of "$4,500." 17 Ill. App. 2d at 103. 
Handelman
 is inapposite to the facts presented in the instant case.

[fn2]The record is unclear as to whether the individual removed was a juror or an alternate juror.

[fn3]"Section 5(b) permits an employee or his representative to bring a separate action for damages against a third party; against any sum obtained as a consequence of the action, the employer may be reimbursed for the amount of workers' compensation benefits paid or to be paid by it.  Such reimbursement may take the form of a lien, on past payments of compensation, or a credit, on future payments." 
Zuber v. Illinois Power Co.
, 135 Ill. 2d 407, 411, 533 N.E.2d 385 (1990).

FOOTNOTES
1:
Defendants cite 
Handelman v. Schwartz
, 17 Ill. App. 2d 101, 149 N.E.2d 418 (1957), for support of their assertion that this court should view the jury's award as a non fatal error on the verdict form.  In 
Handelman
, the jury returned a verdict in the plaintiff's favor and awarded the plaintiff a sum of "$4,5000."  The trial court denied plaintiff's motion to correct the verdict to read "$4,500.00" and granted defendant's motion for a new trial on the ground that the damages assessed by the jury were manifestly excessive. The appellate court reversed the trial court's ruling and held that the verdict contained "an obvious unintentional error" in that "an extra zero was inserted inadvertently" and instructed the court to amend the verdict in accordance with the manifest intent of the jury to award the plaintiff damages in the amount of "$4,500." 17 Ill. App. 2d at 103. 
Handelman
 is inapposite to the facts presented in the instant case.

2:
The record is unclear as to whether the individual removed was a juror or an alternate juror.

3:
"Section 5(b) permits an employee or his representative to bring a separate action for damages against a third party; against any sum obtained as a consequence of the action, the employer may be reimbursed for the amount of workers' compensation benefits paid or to be paid by it.  Such reimbursement may take the form of a lien, on past payments of compensation, or a credit, on future payments." 
Zuber v. Illinois Power Co.
, 135 Ill. 2d 407, 411, 533 N.E.2d 385 (1990).