# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 06-1652, 06-1782, 06-1783, 06-1793,
06-1794, 06-1795 & 06-1796

MILLARD BALTZELL and RUTH ANN BALTZELL,

*Plaintiffs-Appellees,*
*Cross-Appellees,*

*v.*

R&R TRUCKING CO., FREIGHTLINER CORP., and
LUFKIN INDUSTRIES, INC.,

*Defendants-Third Party Plaintiffs-Appellees,*
*Cross-Appellants,*

*v.*

THE ENSIGN-BICKFORD CO.,

*Third Party Defendant-Appellant,*
*Cross-Appellee.*

Appeals from the United States District Court
for the Southern District of Illinois.
No. 02 C 4058—**G. Patrick Murphy**, *Judge.*

ARGUED SEPTEMBER 14, 2007—DECIDED FEBRUARY 4, 2009

Before BAUER, EVANS, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*.  Millard "Skeeter" Baltzell was critically injured when he was crushed by a tractor-trailer while working for The Ensign-Bickford Company. Skeeter sought workers' compensation from Ensign, and along with his wife Ruth Ann, brought strict liability claims against three companies—R&R Trucking Company, the owner of the tractor-trailer; Freightliner Corporation, the tractor manufacturer; and Lufkin Industries, Inc., the trailer manufacturer. These defendants then sought contribution by filing third-party claims against Ensign.

The Baltzells prevailed before a jury, which found the defendants and Ensign collectively liable for $13,980,120. Ensign then moved to dismiss the contribution claims against it in exchange for waiving a statutory lien that it had on the Baltzells' recovery from the defendants. The district court denied Ensign's motion and entered judgment against the defendants and Ensign. We conclude that the Illinois Workers' Compensation Act and the Illinois Supreme Court's decision in *LaFever v. Kemlite Co.*, 706 N.E.2d 441, 452 (Ill. 1998) require us to vacate the court's judgment and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  Workers' compensation in Illinois

Before delving into the facts of this case, we first provide some background on the somewhat complicated

statutory scheme at issue here. Like other states, Illinois has a workers' compensation system in which employers compensate their employees for job-related injuries or illnesses, regardless of fault. *See* Illinois Workers' Compensation Act ("IWCA"), 820 Ill. Comp. Stat. 305/1 et seq. In return for not having to prove fault, employees receive only workers' compensation benefits from their employers and cannot sue their employers to receive more damages. *See id.* at 305/5(a). This rule also bars loss of consortium claims that employees' spouses might otherwise bring against employers. *Id.* (extending bar to "any one otherwise entitled to recover damages for such injury"); *Vickery v. Westinghouse-Haztech, Inc.*, 956 F.2d 161, 162 (7th Cir. 1992) ("[T]he [Illinois] Workers' Compensation Act has been consistently interpreted to bar suits for loss of consortium by a covered worker's spouse . . . ." (citing *Dobrydnia v. Ind. Group, Inc.*, 568 N.E.2d 1002 (Ill. App. Ct. 1991))).

Sometimes, however, parties other than an employer might cause an employee to be injured at work. An employee in this situation can sue these third parties for damages. *See* 820 Ill. Comp. Stat. 305/5(b) ("Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act."). These third parties can in turn seek contribution from

the employer, thereby pulling the employer into the suit. *Id.* Alternatively, an employer may choose to exercise its right to intervene in the suit before satisfaction of judgment. *See Ins. Co. of N. Am. v. Andrew*, 564 N.E.2d 939, 941 (Ill. App. Ct. 1990).

Now suppose an employee ends up recovering money from a third party for a work-related injury. That would imply the employer was not solely responsible for the accident. So Illinois law gives the employer a lien on any recovery that an employee obtains from a third party for a work-related injury. 820 Ill. Comp. Stat. 305/5(b). An employer who exercises this lien gets first crack at any recovery the employee gets from the third party. *Id.* ("[F]rom the amount received by such employee or personal representative [from a third party] there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative . . . .").

To calculate the amount of the employer's lien, one begins with the recovery that the employee receives from the lawsuit and then reduces this value "by an amount equal to the amount found by the trier of fact to be the employer's pro rata share of the common liability in the action." *Id.* The amount of the employer's lien cannot exceed its total workers' compensation obligation. Here are some examples to help illustrate how this calculation works:

| Workers' comp. obligation | Total recovery from suit | % fault of employer | Employer's pro rata liability | Employer's lien[1] |
|---|---|---|---|---|
| $2 M | $5 M | 0% | $0 | $2 M |
| $2 M | $5 M | 8% | $400 K | $2 M |
| $2 M | $2 M | 25% | $500 K | $1.5 M |
| $2 M | $1 M | 40% | $400 K | $600 K |
| $2 M | $1 M | 60% | $600 K | $400 K |
| $2 M | $5 M | 60% | $3 M | $2 M |

As the last entry in the chart shows, sometimes an employer's pro rata liability might exceed its workers' compensation obligation. This is problematic because Illinois law seeks to protect employers from paying more than what workers' compensation requires.

---

[1] Although not raised by the parties in this appeal, the IWCA also provides that any reimbursement that an employer receives when exercising its lien is reduced by: (1) the employer's pro rata share of the employee's costs and reasonably necessary expenses in bringing the suit, and (2) 25% of the employee's attorney fees. *See* 820 Ill. Comp. Stat. 305/5(b). These cost- and fee-sharing provisions make sense—because the employer has cashed in on the employee's suit (by exercising the lien and effectively reducing its workers' compensation obligation), the statute requires the employer to chip in for the expense of the suit.

To avoid this difficulty, the Illinois Supreme Court has provided employers with two different ways to curtail their contribution liability. First, Illinois law caps an employer's contribution liability at "an amount not greater than the [employer's] workers' compensation liability." *Kotecki v. Cyclops Welding Corp.*, 585 N.E.2d 1023, 1028 (Ill. 1991). This value, which is generally referred to as the "*Kotecki* cap," represents the maximum amount that an employer has to pay in contribution.

Despite the protection that *Kotecki* provides, however, some employers might still prefer to pay workers' compensation rather than contribution. For example, a contribution judgment would probably require an employer to make a lump sum payment up front; workers' compensation, on the other hand, often includes a component that is paid out over many years. Even if the lump sum payment is discounted to account for lost investment opportunities, it might not be properly indexed for inflation, which implicitly decreases the cost of future payments. Moreover, because the total cost of workers' compensation often depends on how long the injured employee survives, an employer might prefer workers' compensation if it believes the employee will die sooner than expected. (The flip side is that an employer may end up paying more in workers' compensation than in contribution if the employee lives longer than expected.)

So Illinois law provides employers with a second option—an employer can escape contribution liability altogether by waiving its lien on an employee's recovery from third parties. *See LaFever*, 706 N.E.2d at 454. An

employer who takes this option can no longer share in damages that the employee recovers from a third party. However, the employer can then be certain that its only payment obligation will arise under workers' compensation.

## B.  Factual background

Skeeter Baltzell worked for Ensign, a manufacturer of caps and boosters for explosives, at a facility in Union County, Illinois. He helped load specialized tractor-trailers that hauled explosives away from the Ensign facility. R&R Trucking had a contract with Ensign to provide these tractor-trailers along with the drivers, helpers, and equipment necessary to load and unload the trailers.

On May 22, 2000, an Ensign employee backed an R&R tractor-trailer into Skeeter, crushing him between the trailer and a loading dock. The Freightliner tractor and Lufkin trailer that were involved in the accident were not equipped with a back-up alarm.

Skeeter was terribly injured. His pelvis was severely fractured and his bladder and lower intestinal tract were crushed. Because of his injuries, Skeeter suffered deep vein thrombosis, a heart attack, respiratory failure, and a stroke that left him brain damaged and partially paralyzed. Skeeter still needs constant care and attention from his wife, Ruth Ann, as he has a permanent colostomy, must be catheterized to urinate, and has cognitive difficulties.

Skeeter filed a claim before the Illinois Workers' Compensation Commission (IWCC) seeking workers' compen-

sation benefits from Ensign. Skeeter and Ruth Ann also filed this suit in federal court, alleging strict liability claims under Illinois law for personal injury and loss of consortium, respectively, against R&R, Freightliner, and Lufkin (collectively, the "defendants"). The defendants then filed third-party contribution claims against Ensign.[2]

On April 21, 2005, a jury returned a verdict in favor of Skeeter for $11,980,120, and in favor of Ruth Ann for $2,000,000, which resulted in a total judgment of $13,980,120. The jury apportioned fault as follows: Skeeter Baltzell, 0%; Freightliner, 20%; Lufkin, 10%; R&R, 40%; and Ensign, 30%. Accordingly, Ensign was liable to Skeeter and Ruth Ann for $13,980,120 * .30 = $4,194,036.

Illinois law limited Ensign's contribution liability to the present cash value of its total workers' compensation obligation (i.e., its *Kotecki* cap). But the IWCC hadn't yet finally determined what Ensign's total workers' compensation liability would be, so the district court required Ensign to submit an estimate of this amount. Ensign submitted documentation that its *Kotecki* cap was

---

[2] The district court properly exercised diversity jurisdiction over Skeeter and Ruth Ann's claims. *See* 28 U.S.C. § 1332(a). Skeeter and Ruth Ann were citizens and residents of Illinois, whereas R&R, Freightliner, and Lufkin were incorporated in Missouri, Delaware, and Texas, respectively, and had their principal places of business in Missouri, Oregon, and Texas, respectively. The amount in controversy exceeded $75,000. Similarly, the court had supplemental jurisdiction over the contribution claims against Ensign, a Connecticut corporation with its principal place of business in Connecticut. *See id.* § 1367.

$4,085,571.21, and that it had already paid $873,953.31 in workers' compensation to the Baltzells. Neither the defendants nor the Baltzells disputed these values, which the district court proceeded to adopt.

Ensign then moved to waive its lien on the Baltzells' recovery and to dismiss the defendants' third-party contribution claims. On October 4, 2005, the district court denied this motion, reasoning that "[a]llowing Ensign-Bickford to waive its lien now would more than partially frustrate the purpose of the Contribution Act, and it would do nothing to promote the purposes of the workers' compensation statute." The court then reduced the total judgment of $13,980,120 by the amount that Ensign would pay (the *Kotecki* cap amount of $4,085,571.21), which left the remaining $9,894,548 in damages to be split among the three defendants based on their respective share of the liability.[3] For example, R&R was liable for 40% of the total damages, and the three defendants were liable for 70% of the total damages, so R&R's share was 40%/70% = 57.142857% of the cumulative liability for the three defendants, thereby making R&R liable for $9,894,548 * .57142857 = $5,654,027. Similarly, the court found Freightliner liable for $2,827,013, and Lufkin liable

---

[3] As required by Illinois law, this calculation implicitly reapportioned to the defendants the difference between the liability assessed by the jury against Ensign ($4,194,036) and the *Kotecki* cap amount ($4,085,571.21). *See Ill. Tool Works, Inc. v. Indep. Mach. Corp.*, 802 N.E.2d 1228, 1232 (Ill. App. Ct. 2003).

for $1,413,506. The court entered judgment in favor of the Baltzells in these amounts.

Ensign then filed various post-judgment motions, including another motion to waive its workers' compensation lien and dismiss the third-party contribution claims against it. Meanwhile, the Baltzells and the defendants entered a settlement agreement in which the defendants agreed to pay their respective pro rata shares of the judgment but reserved their right to litigate contribution and setoff issues.

On February 13, 2006, the district court denied Ensign's post-judgment motions, setting the stage for Ensign's current appeal. The defendants also filed related cross/contingent appeals regarding setoff and contribution issues in the event that we vacated the judgment entered against Ensign.

## II.  ANALYSIS

### A.  Ensign was entitled to waive its workers' compensation lien and the contribution claims against it should have been dismissed.

Because this is a diversity case governed by Illinois law, we must resolve this matter how we think the Illinois Supreme Court would. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). If there is no prevailing authority from that court, we give great weight to the holdings of the Illinois appellate courts. *Id.*

The primary precedent at issue here is the Illinois Supreme Court's decision in *LaFever v. Kemlite Co*, 706 N.E.2d 441 (Ill. 1998). Similar to this case, the employee in *LaFever* suffered a workplace injury and sued a third party, who in turn sued the employer for contribution. After a jury found that both the third party and the employer were liable, the trial court permitted the employer to waive its workers' compensation lien and have the contribution claim against it dismissed. *Id.* at 444-46. The Illinois Supreme Court approved of the trial court's decision and held that an employer can wait and see how a jury verdict goes before deciding whether to waive its lien. *Id.* at 453 (noting that nothing in 820 Ill. Comp. Stat. 305/5(b) "required [the employer] to waive the lien by a date certain").

Here, the district court did not allow Ensign to waive its lien because it felt that allowing a post-verdict waiver would "more than partially frustrate the purpose of the Contribution Act." We understand the court's apparent belief that it would be unfair to allow a post-verdict waiver, given that Ensign decided to waive the lien only after the jury found it to be significantly liable for the accident. (Presumably Ensign would not have waived the lien if the jury had instead found it minimally liable or not liable at all.) But *LaFever* required the district court to grant Ensign's late waiver. Indeed, *LaFever* expressly indicated that an employer can engage in this kind of strategic decisionmaking. *Id.* (noting there was nothing unfair in the employer's strategy of waiting until after trial to waive its lien and stating that the court was "reluctant to dictate trial strategy to any

litigant when that strategy is entirely consistent with controlling statutes and prior decisions of this court").

Still, the Baltzells and the defendants contend that *LaFever* is distinguishable from this case. In *LaFever*, the employer had already paid out the workers' compensation benefits that it owed the employee and it was not required to make any future payments. By contrast, Ensign estimates that it still owes about $3 million in future workers' compensation payments to the Baltzells.

Illinois courts, however, have never suggested that we should distinguish between paid and future benefits when deciding whether an employer can waive its workers' compensation lien. Indeed, Illinois law is clear that an employer's lien encompasses both paid and future workers' compensation benefits. For example, the IWCA states that from the money the employee receives from a third-party suit, "there shall be paid to the employer the amount of compensation <u>paid or to be paid by him to such employee</u>." 820 Ill. Comp. Stat. 305/5(b) (emphasis added). And the *LaFever* court itself noted that an "employer may claim a lien on the worker's recovery, in an amount equal to the amount of workers' compensation <u>due</u> the worker." *LaFever*, 706 N.E.2d at 451 (emphasis added); *see also Ramsey v. Morrison*, 676 N.E.2d 1304, 1313 (Ill. 1997) (noting that the workers' compensation lien is "equal to the amount of the workers' compensation benefits <u>paid or owed</u>." (emphasis added)); *cf. Zuber v. Ill. Power Co.*, 553 N.E.2d 385, 386 (Ill. 1990) (noting that "reimbursement" to an employer "may take the form of a lien, on past payments of compensation, or a credit, on future payments").

Moreover, Illinois courts have allowed employers to waive their liens even when they owed future payments. *See generally Branum v. Slezak Constr. Co., Inc.*, 682 N.E.2d 1165 (Ill. App. Ct. 1997) (not questioning a trial court's decision to permit an employer to waive its lien even though the employer still owed workers' compensation). For example, in *Kim v. Alvey, Inc.*, 749 N.E.2d 368, 372, 377 (Ill. App. Ct. 2001), an Illinois appellate court indicated that a trial court properly allowed an employer to waive its lien in a post-trial motion, even though the amount of its workers' compensation obligation (and hence, the value of the lien) had not yet been determined.

Similarly, we conclude that the district court should have allowed Ensign to waive its lien on the Baltzells' recovery in their lawsuit against the defendants. Thereafter, the court should have dismissed the contribution claims against Ensign.

### B. The defendants are entitled to a setoff for the workers' compensation benefits that Ensign has already paid.

Given that Ensign is not liable for contribution (but still owes workers' compensation), we next determine whether the defendants are entitled to a setoff that reduces their liability. Once an employer waives its lien, an employee who has received workers' compensation benefits will never have to repay the employer for those benefits, even if the employee recovers damages from third parties for the same injury. In such a situation, Illinois courts award a setoff that reduces the liability of

third parties by whatever amount of workers' compensation benefits the employee has already received. *See, e.g.*, *Branum*, 682 N.E.2d at 1178-79. The rationale behind this rule is simple—a plaintiff who has already received workers' compensation from an employer should not get a double recovery from a third party for the same injury. *See Wilson v. Hoffman Group, Inc.*, 546 N.E.2d 524, 530-31 (Ill. 1989). So the defendants here are entitled to a setoff for any workers' compensation benefits that the Baltzells have already received from Ensign.

This does not mean, however, that a setoff is proper for future workers' compensation benefits whose value has yet to be determined. As far as we know, the IWCC, which is in charge of determining workers' compensation awards, has yet to issue a final determination on the award that the Baltzells will receive for the accident. And an Illinois appellate court has indicated that we should not try to divine what that award will be. *See Branum*, 682 N.E.2d at 1178-79. We follow that court's lead and conclude that it would be too speculative to award a setoff for future workers' compensation benefits when we do not know how the IWCC will resolve the matter and the parties have not stipulated to a setoff amount.[4]

---

[4] While the plaintiffs and defendants both tacitly agreed to the *Kotecki* cap amount that Ensign submitted (which was Ensign's estimate of its workers' compensation obligation), the parties never agreed to a setoff value. *See* R&R Br. at 31 n.6; R. 457, Ex. A; *see also Branum*, 682 N.E.2d at 1177 ("No workers' compensation adjudication is made within a contribution case . . . when a

(continued...)

*See id.* ("[A]bsent an agreement between all parties, a setoff of workers' compensation benefits cannot be made until the amount of workers' compensation benefits to which plaintiff is entitled is fully determined."); *see also Ocampo v. Paper Converting Mach. Co.*, No. 02 C 4054, 2005 WL 2007144, at *17-18 (N.D. Ill. Aug. 12, 2005) (following *Branum*).

On remand, the district court should require the parties to submit an update on the workers' compensation payments that have been made and on the status of the proceedings before the IWCC. The court should also impose a setoff equal to the paid benefits that the Baltzells have already received from Ensign.

Regarding future benefits, we also note that the most efficient solution might be for all the parties to agree that any future workers' compensation payments that the Baltzells receive from Ensign will be held in trust and distributed to the defendants according to their pro rata liability. *See Pekin Ins. Co. v. Hiera*, 840 N.E.2d 1236, 1239 (Ill. App. Ct. 2005) (approving of an insurance contract that set forth this sort of procedure). The defendants suggested that we could mandate this outcome, but it is not clear whether we have the authority to do this and at any rate, we decline to take this step given our uncertainty as to the final status of the matter before the IWCC.

---

(...continued)

trial court determines the present cash value of future workers' compensation benefits under *Kotecki*." (citation omitted)).

### III.  CONCLUSION

The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.